IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. _____

| | | |
|---|---|---|
| **Amy Sparks, individually, and Robert D. Sparks, as Personal Representative of the Estate of Jarred B. Sparks,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | **WRONGFUL DEATH / SURVIVAL ACTION** |
| **vs.** | ) ) ) | **COMPLAINT** |
| **Oxy-Health, LLC and Oxy-Health Corporation,** | ) ) ) | **JURY TRIAL DEMANDED** |
| **Defendants.** | ) ) ) | |

## COMPLAINT FOR DAMAGES

By and through the undersigned Counsel of Record and pursuant to the Federal Rules of Civil Procedure, Plaintiff AMY SPARKS, individually, and ROBERT D. SPARKS, as Personal Representative of the Estate of Jarred B. Sparks (collectively "Plaintiffs"), file this Complaint for Damages against Defendants OXY-HEALTH, LLC ("OH LLC") and OXY-HEALTH CORPORATION ("OH CORP") (collectively "Defendants") and show the Court the following:

## NATURE OF THE ACTION

1. This wrongful death and survival action seeks compensatory and punitive damages arising from the wrongful death of Jarred Sparks, which resulted from the Defendants' negligent acts and/or omissions and defective hyperbaric chamber. These events form the basis of Plaintiffs' wrongful death and survival causes of action against the Defendants. Plaintiffs

seek actual and consequential damages as well as punitive damages to halt and deter such conduct from taking place in the future.

**THE PARTIES, JURISDICTION, AND VENUE**

2. At all relevant times, Amy Sparks was and is a resident of Cumberland County, North Carolina.

3. At all relevant times, Robert D. Sparks was and is a resident of Cumberland County, North Carolina.

4. Robert D. Sparks is the father, Personal Representative, and a beneficiary of Jarred Sparks, deceased.

5. Defendant OH LLC is a California limited liability company with its principal place of business in Los Angeles County, California. OH LLC manufactured, distributed and/or processed the product at issue in this case, which caused the wrongful death of Jarred Sparks. OH LLC is subject to the jurisdiction of this Court pursuant to N.C. Gen. Stat. § 1-75.4(4). OH LLC can be served via its registered agent for service of process: Hemant Desai, 160 E. Arrow Hwy, San Dimas, California 91773.

6. Defendant OH CORP is a California corporation with its corporate headquarters and principal place of business in Los Angeles County, California. OH CORP manufactured, distributed and/or processed the product at issue in this case, which caused the wrongful death of Jarred Sparks. OH CORP is subject to the jurisdiction of this Court pursuant to N.C. Gen. Stat. § 1-75.4(4). OH CORP can be served via its registered agent for service of process: Wei C. Wong, 716 S. Garfield Ave., Alhambra, California 91801.

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and the Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. Venue of this action properly lies in this judicial district pursuant to 28 U.S.C. § 1391(a) as it is the judicial district in which a substantial part of the events or omissions giving rise to the claims alleged herein occurred.

9. Defendants have stipulated that they will "submit to personal jurisdiction in North Carolina for this litigation, waive any statute of limitations under North Carolina law that might otherwise bar the filing at this time of this action in that state, and that they will recognize the validity of any judgment that might be rendered [in North Carolina]." (*See* Exhibit "A").

## CONDITIONS PRECEDENT

10. Prior to the commencement of this action, on or about July 16, 2012, the Deputy Clerk of the Superior Court in Cumberland County, North Carolina issued Letters Testamentary to Plaintiff, Robert D. Sparks, authorizing him to administer and represent the Estate of Jarred Sparks (*See* Exhibit "B").

11. All conditions precedent to the filing of this action and to the Plaintiffs' right to the relief sought have occurred, have been performed, or have been excused.

## FACTS COMMON TO ALL COUNTS

11. Plaintiffs adopt and re-allege each paragraph above as if set forth fully herein.

12. Jarred Sparks was born on April 24, 1992. He was mildly autistic and, at the time of his untimely death, was living with his parents.

13. Recent research has discovered that hyperbaric oxygen therapy ("HBOT") improves symptoms in autistic children.

14. On or about January 12, 2011, Jarred Sparks was prescribed hyperbaric oxygen therapy for the treatment of his autism by Jerrold J. Kartzinel, M.D. Specifically, Dr. Kartzinel wrote Jarred a prescription for "HBOT home chamber."

15. According to Defendants' website, www.oxyhealth.com, "OxyHealth chambers are the most reliable chambers on the market." Moreover, the website states that "chamber safety records are flawless" and "OxyHealth is the global leader in quality and safety."

16. Additionally, Defendants state on the website that "OxyHealth portable hyperbaric chambers incorporate a unique 'flow-through' system that continuously flushes ambient air through the chamber environment resulting in a no risk environment to the occupant. This is primarily why OxyHealth chambers are approved for home use, with many other fail-safe redundancy features that also regulate the pressure."

17. On or about February 5, 2011, Plaintiffs entered into an agreement with A Small Miracle, Inc., a provider of comprehensive services and products for individuals with special needs located in and around North Carolina, for the purchase of an OxyHealth "Vitaeris 320 HBOT Chamber and O2 Concentrator."

18. The Vitaeris 320 HBOT Chamber (hereinafter the "Chamber") is a portable mild hyperbaric chamber manufactured and/or distributed by Defendants.

19. The Chamber includes a 10-foot medical grade air supply hose with "quick-disconnect" valves that connect the oxygen pump/compressor to the Chamber's main body.

20. As early as 2002, Defendants were aware that the same or similar type of quick-disconnect valve had a tendency to disconnect from its portable mild hyperbaric chambers without user manipulation.

21. The OxyHealth Portable Mild Hyperbaric Chambers "Operating and Reference Guide" (Revision 5- September 2005) states as follows:

(i)   The Chamber "offers a safe and effective means of providing mild hyperbaria. Its unique design allows the mild hyperbaric chamber to easily fit in the office, the clinic, and even a home." (Page 2).

(ii)  "Fresh air is constantly pumped into the chamber while 'old' air is exhausted via these Relief Valves (Air Exchange Valves) to eliminate $CO_2$ buildup." (Page 7).

(iii) "With the proper training, a user can easily give 'self-treatments'- a feature that no other hyperbaric chamber can offer." (Page 8).

(iv)  "No specialized training is required to operate the portable mild hyperbaric chamber." (Page 11).

(v)   "There are no known usage hazards associated with these portable mild hyperbaric chambers." (Page 11).

(vi)  "As long as the Chamber Compressor is 'ON' and running, fresh air will be introduced into the chamber and the equilibrium valve for carbon dioxide concentration will remain at **less than one percent (1%).**" (Page 31).

22. On or about the evening of June 9, 2011, Jarred's brother helped him get in the Chamber for treatment.

23. Jarred's brother made sure the oxygen compressor was running and the Chamber started to inflate before going to a computer in the hallway just outside of the bedroom.

24. When Jarred's mother went to get Jarred out of the Chamber after his HBOT treatment, the quick-disconnect valve had disconnected, which resulted in no oxygen flowing into the Chamber.

25. As a result, Jarred died from asphyxiation.

## CLAIMS FOR RELIEF

### COUNT ONE
Inadequate Design as to All Defendants

26. Plaintiffs adopt and re-allege each paragraph above as if set forth fully herein.

27. This cause of action is brought pursuant to N.C. Gen. Stat. § 99B-6.

28. Defendants manufactured and/or distributed the Chamber and placed it in the stream of commerce knowing that it was to be used without inspection for defects.

29. Jarred Sparks neither misused nor materially altered the Chamber and, at the time of the incident complained of herein, the Chamber and oxygen pump/compressor were in the same or substantially similar condition that they were in at the time of sale.

30. At all relevant times, including when the incident alleged herein occurred, the Chamber was used in an intended, ordinary and foreseeable manner.

31. At the time of its manufacture/assembly, Defendants acted unreasonably in designing the Chamber.

32. At the time the Chamber left Defendants' control, Defendants unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design that could have been reasonably adopted and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the Chamber.

33. The Chamber's design was defective because the Chamber did not perform as safely as an ordinary consumer would have expected it to perform when used in an intended or reasonably foreseeable way.

34. Specifically, ambient air and/or oxygen were not continuously provided throughout the Chamber's main body, resulting in deflation, carbon dioxide accumulation and/or asphyxiation.

35. Additionally, the benefits of the Chamber design do not outweigh the risk of danger inherent in such design. At the time the Chamber left the Defendants' control, the design of the Chamber was so unreasonable that a reasonable person, aware of the relevant facts, would not use or consume a hyperbaric chamber of this design.

36. Specifically, the use of a quick-disconnect valve to provide the oxygen supply to the Chamber and the lack of a monitoring system, alarm system, carbon dioxide detector and/or other safety device in a hyperbaric chamber intended for in-home use by non-medical personnel constitutes a defective design.

37. Jarred's ability to avoid injury was hindered by the absence of a safety device incorporated into the Chamber to alert him that oxygen was no longer flowing into the Chamber and/or deadly carbon dioxide was accumulating in the Chamber.

38. As a direct and proximate result of the Chamber's defective design, Jarred suffered damages, including pain and suffering, mental anguish, emotional distress, terror, knowledge of impending death, funeral expenses, and such other damages as the Court or jury deems just and proper.

39. As a direct and proximate result of the Chamber's defective design, Plaintiffs suffered damages, including medical expenses; funeral expenses; loss of services, care and assistance

of the decedent; loss of the society, companionship, comfort and advice of the decedent; mental anguish and emotional distress; and such other damages as the Court or jury deems just and proper.

40. By reason of the foregoing, Plaintiff Robert D. Sparks, as Personal Representative, is entitled to recover damages for all general, special, and pecuniary damages proximately caused by Defendants and the defective condition of the Chamber.

41. WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for all actual and compensatory damages, as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

## COUNT TWO
### Inadequate Warning as to All Defendants

42. Plaintiffs adopt and re-allege each paragraph above as if set forth fully herein.

43. This cause of action is brought pursuant to N.C. Gen. Stat. § 99B-5.

44. Defendants manufactured, distributed, and/or sold the Chamber and therefore had a duty to reasonably warn consumers about the hazards inherent in the Chamber.

45. The Chamber posed potential risks that were known and/or should have been known by Defendants at the time of manufacture, distribution, and/or sale.

46. At the time the Chamber left the control of the manufacturer, the Chamber, without an adequate warning, created an unreasonably dangerous condition that the manufacturer knew, or in the exercise of ordinary care should have known, posed a substantial risk of harm to a reasonably foreseeable claimant.

47. Specifically, the quick-disconnect valve has the propensity to disconnect from the Chamber's main body without user manipulation or misuse, and there is no safety device to warn consumers when oxygen is not flowing into the Chamber and/or carbon dioxide is accumulating.

48. The Sparks were unaware of the dangerous nature of the Chamber and its defective design.

49. Because of these facts, the Chamber presented a substantial danger during ordinary and reasonably foreseeable use not readily recognizable to the ordinary consumer.

50. Defendants unreasonably failed to adequately warn or instruct consumers, including the Sparks, of these potential risks of substantial danger.

51. The lack of such warnings rendered the Chamber defective.

52. As a direct and proximate result of the Defendants' failure to adequately warn of the substantial danger posed by the Chamber, the Chamber was defective and Jarred suffered damages, including pain and suffering, mental anguish, emotional distress, terror, knowledge of impending death, funeral expenses, and such other damages as the Court or jury deems just and proper.

53. As a direct and proximate result of the Defendants' failure to adequately warn of the substantial danger posed by the Chamber, the Chamber was defective and Plaintiffs suffered damages, including medical expenses; funeral expenses; loss of services, care and assistance of the decedent; loss of the society, companionship, comfort and advice of the decedent; mental anguish and emotional distress; and such other damages as the Court or jury deems just and proper.

54. By reason of the foregoing, Plaintiff Robert D. Sparks, as Personal Representative, is entitled to recover damages for all general, special, and pecuniary damages proximately caused by Defendants and the defective condition of the Chamber.

55. WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for all actual and compensatory damages, as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

## COUNT THREE
### Negligence and Negligent Failure to Warn as to All Defendants

56. Plaintiffs adopt and re-allege each paragraph above as if set forth fully herein.

57. Defendants manufactured, distributed, and/or sold the Chamber.

58. Defendants had a duty to exercise reasonable care in the design of the Chamber so that it could be safely used as intended by consumers, such as the Sparks.

59. Defendants had a duty to exercise reasonable care in assembling component parts and inspecting and testing them before the Chamber left their possession to ensure that the Chamber was safe for its intended and reasonably foreseeable uses.

60. Defendants had a duty to warn of the dangers of which they knew or reasonably should have known arising from the use of the Chamber and an affirmative duty to protect the ultimate consumers from the hazards inherent in the Chamber's defective design.

61. The Chamber was defectively designed when it left the Defendants' control.

62. The Chamber malfunctioned when put to ordinary and foreseeable use.

63. Defendants knew or should have known that the Chamber was defectively designed and/or likely to be dangerous to consumers when used in an intended or reasonably foreseeable manner.

64. Specifically, Defendants knew that the quick-disconnect valve had the propensity to disconnect from the Chamber's main body without user manipulation or misuse and that the Chamber lacks safety features to warn consumers when oxygen is not flowing into the Chamber and/or carbon dioxide is accumulating.

65. Defendants knew or should have known that ultimate consumers such as the Sparks would not realize these inherent dangers.

66. Defendants owed the Sparks a duty of reasonable care and were negligent, grossly negligent, willful, wanton, reckless and careless, and breached their respective duties of care by:

> (i)        failing to adopt and implement adequate safety procedures and policies;
>
> (ii)      failing to use reasonable care and precautions to ensure the safe use of the Chamber;
>
> (iii)     failing to exercise reasonable care in the design of the Chamber;
>
> (iv)     failing to exercise reasonable care in the manufacture of the Chamber;
>
> (v)      failing to exercise reasonable care in the distribution of the Chamber;
>
> (vi)     failing to incorporate safeguards into the design of the Chamber, including but not limited to a locking mechanism where the quick-disconnect valve connected to the Chamber's main body and alarm systems, warning features, and/or carbon dioxide detectors, to prevent the Chamber from presenting an unreasonable risk of substantial danger;
>
> (vii)    failing to provide proper and safe materials for use in the Chamber;

(viii)    failing to take measures to ensure that the Chamber and accompanying parts were merchantable and safe for their intended use prior to placing these products in the stream of commerce;

(ix)    failing to exercise reasonable care in the testing of the Chamber;

(x)    failing to discover through testing procedures that the Chamber was not properly manufactured and safe for its intended use;

(xi)    failing to exercise reasonable care in the inspection of the Chamber;

(xii)    failing to discover through inspection procedures that the Chamber did not contain proper materials/parts and was unreasonably dangerous;

(xiii)    failing to adopt, implement, and/or convey adequate warnings of the dangers arising from the intended, reasonable and foreseeable use of the Chamber; and

(xiv)    on such other and further particulars as the evidence may show.

67. Each Defendant's negligence was a substantial factor in causing Jarred's death.

68. As a direct and proximate result of the Defendants' negligence and the breaches complained of herein, Jarred suffered damages, including pain and suffering, mental anguish, emotional distress, terror, knowledge of impending death, funeral expenses, and such other damages as the Court or jury deems just and proper.

69. As a direct and proximate result of the Defendants' negligence and the breaches complained of herein, Plaintiffs suffered damages, including medical expenses; funeral expenses; loss of services, care and assistance of the decedent; loss of the society, companionship, comfort and advice of the decedent; mental anguish and emotional distress; and such other damages as the Court or jury deems just and proper.

70. By reason of the foregoing, Plaintiff Robert D. Sparks, as Personal Representative, is entitled to recover damages for all general, special, and pecuniary damages proximately caused by Defendants' negligent acts and/or omissions.

71. WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for all actual and compensatory damages, as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

## COUNT FOUR
### Breach of Implied Warranty of Merchantability as to All Defendants

72. Plaintiffs adopt and re-allege each paragraph above as if set forth fully herein.

73. This cause of action is brought pursuant to N.C. Gen. Stat. § 25-2-314.

74. Defendants manufactured, distributed and/or sold the Chamber at issue in this case.

75. The Sparks purchased the Chamber from A Small Miracle, Inc pursuant to a prescription for the treatment of Jarred's autism.

76. At the time of purchase, Defendants were in the business of manufacturing/distributing portable mild hyperbaric chambers.

77. The Chamber was not merchantable in one or more of the following particulars:

    (i)      It was not of the same quality as that generally acceptable in the trade;

    (ii)     It was not fit for the ordinary purposes for which such goods are used;

    (iii)    It was not adequately contained, packaged, and labeled; and

    (iv)    It failed to conform to the promises and/or affirmations of fact made on the packaging/label/marketing material.

78. The failure of the Chamber to be merchantable was a substantial factor in causing Jarred's suffering and death.

79. Defendants, as manufacturer and/or distributor of the Chamber, are liable for breach of implied warranty of merchantability.

80. Defendants' breach of warranty was a direct and proximate cause of Jarred's injuries, and he is entitled to recover damages for all general, special, and pecuniary damages proximately caused by the breach of warranty.

81. As a direct and proximate result of the Defendants' breaches complained of herein, Jarred suffered damages, including but not limited to, mental anguish, emotional distress, terror, knowledge of impending death, economic losses and such other damages as the Court or jury deems just and proper.

82. WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for all actual and compensatory damages that Jarred suffered as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

## COUNT FIVE
### Breach of Express Warranty as to All Defendants

83. Plaintiffs adopt and re-allege each paragraph above as if set forth fully herein.

84. This cause of action is brought pursuant to N.C. Gen. Stat. § 25-2-313.

85. Defendants manufactured, distributed and/or sold the Chamber at issue in this case.

86. According to Defendants' website, www.oxyhealth.com, "OxyHealth chambers are the most reliable chambers on the market." Moreover, the website states that "chamber safety records are flawless" and "OxyHealth is the global leader in quality and safety."

87. Additionally, Defendants state on the website that "OxyHealth portable hyperbaric chambers incorporate a unique 'flow-through' system that continuously flushes ambient air through the chamber environment resulting in a no risk environment to the occupant. This is primarily why OxyHealth chambers are approved for home use, with many other fail-safe redundancy features that also regulate the pressure."

88. The OxyHealth Portable Mild Hyperbaric Chambers "Operating and Reference Guide" (Revision 5- September 2005) states as follows:

   (i)    The Chamber "offers a safe and effective means of providing mild hyperbaria. Its unique design allows the mild hyperbaric chamber to easily fit in the office, the clinic, and even a home." (Page 2).

   (ii)   "Fresh air is constantly pumped into the chamber while 'old' air is exhausted via these Relief Valves (Air Exchange Valves) to eliminate $CO_2$ buildup." (Page 7).

   (iii)  "With the proper training, a user can easily give 'self-treatments'- a feature that no other hyperbaric chamber can offer." (Page 8).

   (iv)   "No specialized training is required to operate the portable mild hyperbaric chamber." (Page 11).

   (v)    "There are no known usage hazards associated with these portable mild hyperbaric chambers." (Page 11).

   (vi)   "As long as the Chamber Compressor is 'ON' and running, fresh air will be introduced into the chamber and the equilibrium valve for carbon dioxide concentration will remain at **less than one percent (1%).**" (Page 31).

89. These affirmations of fact, promises and/or descriptions of the Chamber became part of the basis of the bargain and created an express warranty that the Chamber would conform as warranted.

90. However, Defendants breached the express warranties, as the Chamber did not continuously flush ambient air through the chamber environment resulting in a no risk environment to the occupant, was not reliable, was not safe for home use, and did not incorporate fail-safe redundancy features to regulate the pressure in the Chamber.

91. As such, Defendants are liable for breach of warranty.

92. Defendants' breach of warranty was a substantial factor and direct and proximate cause of Jarred's injuries, and he is entitled to recover damages for all general, special, and pecuniary damages proximately caused by said breach of warranty.

93. As a direct and proximate result of the Defendants' breaches complained of herein, Jarred suffered damages, including but not limited to, mental anguish, emotional distress, terror, knowledge of impending death, and such other damages as the Court or jury deems just and proper.

94. WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for all actual and compensatory damages that Jarred suffered as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

## COUNT SIX
### Unfair and Deceptive Trade Practices as to All Defendants

95. Plaintiffs adopt and re-allege each paragraph above as if set forth fully herein.

96. The Defendants' conduct was intended to result, and did result, in the sale of goods for personal, family, or household use.

97. The Defendants' conduct was "in or affecting commerce," defined as "all business activities."

98. At all times relevant, Defendants had actual knowledge that the quick-disconnect valve had the propensity to disconnect from the Chamber's main body without user manipulation or misuse and there is no safety device to warn consumers when oxygen is not flowing into the Chamber and/or carbon dioxide is accumulating.

99. Despite Defendants' knowledge of these facts, Defendants failed to disclose this information to consumers, such as the Sparks, whether on the packaging, labels or via warning.

100. The Sparks were not aware that: (a) the quick-disconnect valve had the propensity to disconnect without user manipulation or misuse, (b) there is no safety device to warn consumers when oxygen is not flowing into the Chamber and/or carbon dioxide is accumulating or (c) the Chamber was not safe for in-home use.

101. This omitted information is material because the lack of oxygen in-flow and carbon monoxide accumulation can, and did, lead to death.

102. Had the Sparks known of this material information, they would not have purchased the Chamber.

103. Defendants' conduct as alleged in this Complaint constitutes unfair and deceptive trade practices pursuant to N.C. Gen. Stat. § 75-1.1.

104. A trade practice is unfair if it offends established public policy or if it is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

105. A trade practice is deceptive if it has the capacity or tendency to deceive.

106. Defendants committed unfair trade practices by engaging in conduct where the utility of such conduct, if any, is outweighed by the gravity of the consequences to consumers like the Sparks and engaging in conduct that is immoral, unethical, oppressive, unscrupulous, deceptive or substantially injurious to consumers.

107. Specifically, Defendants did not disclose that the quick-disconnect valve had the propensity to disconnect without user manipulation or misuse, there is no safety device to warn consumers when oxygen is not flowing into the Chamber and/or carbon dioxide is accumulating, and the Chamber is not safe for in-home use.

108. Jarred suffered injury in fact, including physical, emotional, and economic damages, as a result of Defendants' unfair practices.

109. Additionally, according to Defendants' website, www.oxyhealth.com, "OxyHealth chambers are the most reliable chambers on the market." Moreover, the website states that "chamber safety records are flawless" and "OxyHealth is the global leader in quality and safety."

110. Similarly, Defendants state on the website that "OxyHealth portable hyperbaric chambers incorporate a unique 'flow-through' system that continuously flushes ambient air through the chamber environment resulting in a no risk environment to the occupant. This is primarily why OxyHealth chambers are approved for home use, with many other fail-safe redundancy features that also regulate the pressure."

111. These statements are patently false, misleading and deceptive.

112. Upon information and belief, Defendants carried out their deceptive scheme in a deliberate effort to induce the Sparks and other consumers to purchase the Chamber and increase profits.

113. As a result of Defendants' misleading and deceptive statements and omissions, reasonable consumers, including the Sparks, were misled or likely to be misled into believing that the Chamber was safe for home use.

114. As such, Defendants' deceptive statements and omissions caused substantial injury to consumers, including Jarred Sparks.

115. WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for all actual and compensatory damages that Jarred suffered as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated and treble damages, together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

## COUNT SEVEN
### Negligent Infliction of Emotional Distress as to All Defendants

116. Plaintiffs adopt and re-allege each paragraph above as if set forth fully herein.

117. It was reasonably foreseeable that Defendants' negligent conduct and defective design of the Chamber would cause severe emotional distress to Plaintiff Amy Sparks.

118. Defendants state on the website that "OxyHealth portable hyperbaric chambers incorporate a unique 'flow-through' system that continuously flushes ambient air through the chamber environment resulting in a no risk environment to the occupant. This is primarily why OxyHealth chambers are approved for home use, with many other fail-safe redundancy features that also regulate the pressure."

119.   Because the Chamber was intended for home use, Defendants knew or should have known that a parent, such as Amy Sparks, would perceive the immediate injuries to her son in the event that the defective design of the Chamber resulted in his suffocation and death inside the Chamber.

120.   Defendants' negligent conduct and the defective Chamber was the proximate cause of Jarred's death.

121.   Amy Sparks was in the home when Jarred suffocated in the Chamber and found her son unresponsive with his eyes still open.

122.   As a proximate result of Defendants' negligent conduct, Amy Sparks suffers from chronic depression and other severe, disabling emotional/mental conditions.

123.   WHEREFORE, Plaintiff Amy Sparks demands judgment against Defendants, jointly and severally, for all actual and compensatory damages that she suffered as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

## COUNT EIGHT
### Punitive Damages as to All Defendants

124.   Plaintiffs adopt and re-allege each paragraph above as if set forth fully herein.

125.   The actions and inactions of Defendants were of such a character as to constitute a pattern or practice of willful, wanton and reckless misconduct causing substantial harm and resulting in damages to Jarred Sparks and Plaintiffs.

126.   More specifically, Defendants acted with a conscious and flagrant disregard for the rights and safety of Jarred and/or deliberately engaged in willful, wanton and reckless disregard for the life and safety of Jarred.

127. By reason of the foregoing, Defendants are liable for punitive and exemplary damages.

128. WHEREFORE, Plaintiff demands judgment against Defendants for punitive and exemplary damages, plus interest, costs and attorneys' fees for having to bring this action, and such other and further relief as this Honorable Court or jury may deem just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray as follows:

1. For a trial by jury and judgment against All Defendants for such sums as actual and other compensatory damages in an amount as a jury may determine and in excess of the minimum jurisdictional limit of this Honorable Court.

2. For exemplary and punitive damages against All Defendants in an amount as a jury may determine to halt and deter such conduct.

3. For the costs of this suit, including attorney's fees.

4. For such other and further relief to which they may be entitled and as this Honorable Court may deem just and proper.

Respectfully submitted this 12th day of September, 2013,

**MOTLEY RICE LLC**

By:     /s/ Justin D. Bice_____
        Anne McGinness Kearse
        T. David Hoyle
        W. Christopher Swett
        Attorneys for Plaintiffs
        MOTLEY RICE LLC
        28 Bridgeside Boulevard
        Mount Pleasant, SC  29464
        Tel: (843) 216-9000
        Fax: (843) 216-9450
        cswett@motleyrice.com
        (TO MAKE SPECIAL APPEARANCE)

Justin D. Bice
Attorney for Plaintiffs
BICE LAW LLC
6000 Fairview Road, STE 1200
Charlotte, NC 28210
Justin@Bicelaw.us
Tel: (704) 243-8778
Fax: (704) 612-0273
State Bar No. 38033
Local Civil Rule 83.1 Counsel