# EXHIBIT L

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

CIVIL ACTION NO.: 5:13-cv-00649-FL

AMY SPARKS, individually, and    )
ROBERT D. SPARKS, as Personal    )
Representative of the ESTATE     )
OF JARRED B. SPARKS,             )
                                 )
     Plaintiffs,                 )
                                 )
vs.                              )
                                 )
OXY-HEALTH, LLC and              )
OXY-HEALTH CORPORATION,          )
                                 )
     Defendants.                 )
_____  )


VIDEOTAPED DEPOSITION OF JACK PRESSON

February 27, 2014

9:06 a.m.

Taken by the Defendants
Pursuant to Amended Notice

At 1170 South Main Street
Waynesville, North Carolina


Reported by:

Mary Jo McGill, RDR, CLR


SPERLING & BARRACO, INC.

surprise.

So now if we had had a steel side or hard side, as they call them, the deep divers, that's an entirely different story. You just don't go buy those and put them in your house. That's not the intent.

And from our point of view as a perceived benign environment that we've been using for years, the things you can and can't do, you know. And basically the one thing you can't do is be in there when it's pressurized and reach up and unzip it.

Q. Got you. Did you talk to the Sparks at all about monitoring the people that were being -- that were being treated inside the chamber?

A. Nope.

Q. One way or the other?

A. Nope.

Q. Was there any discussion in -- did they ask you any questions about how you used the chamber or whether or not you monitored the people inside the chamber?

A. They knew that we -- when we went in there with Robbie, we got in there with him. Now, once again, how they operate their own chamber is their decision.

Q. And did they share with you any details about how they intended to use the chamber while you were

SPERLING & BARRACO, INC.

family in connection with the -- the delivery of the chamber to them?

A. No.

Q. Take a look at page 26. And before we do that, were you aware that that language was in the -- in the manual?

A. No.

Q. Okay. Had you -- did you ever read the manual that you brought to the Sparks home or the one that accompanied your chamber?

A. Front to back, no. I read the applicable portions for operation.

Once again, let's go back to the statement, because this is -- this is where you talk about how you treat -- how you do it differently than other folks. Okay.

So it says, "We recommend an attendant be present." I'm in the chamber with him. I'm the control, or Janet is the control. So, yep, duly noted. But we already go beyond what this even recommends. So to me this statement for my family is a nonissue.

Q. Because you were already doing that and more?

A. Yeah.

Q. Understood.

A. Okay.

SPERLING & BARRACO, INC.

Q. And so you -- but you didn't discuss that at all with Mr. Sparks when you delivered the chamber, correct?

A. No. Once again, they had already operated the chamber for over a year or for a year. They -- they know -- they will make their decisions on how they're going to operate it and who is going to operate it. Okay.

Q. Okay. Take a look at page 26 under step 7 of operating the chamber.

A. Okay.

Q. Have you ever read this section before today?

A. No.

Q. Okay. So under step 7 it says, "Set a clock or timer for the prescribed treatment period." Do you see that?

A. Yeah.

Q. Did you do that?

A. With the Sparks?

Q. When you were using the chamber, did you sometimes use a clock or timer?

A. Yeah, when we first started.

Q. Got you. And then after awhile, did you stop doing that?

A. Yes. We do not use one now.

SPERLING & BARRACO, INC.