# EXHIBIT Q

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NORTH CAROLINA

WESTERN DIVISION

AMY SPARKS, individually, and
ROBERT D. SPARKS, as Personal
Representative of the ESTATE
OF JARRED B. SPARKS,

        Plaintiffs,    CIVIL ACTION NO.
                                  5:13-cv-00649-FL
   -vs-

OXY-HEALTH, LLC and
OXY-HEALTH CORPORATION,

        Defendants.

\* \* \*

DEPOSITION OF:

RONALD J. NATOLI, JR., P.E.

Thursday, July 17, 2014

12:48 p.m.

\* \* \*

Robson Forensic, Inc.
301 Grant Street
Suite 4300
Pittsburgh, Pennsylvania 15219

Susan R. Perkins, Court Reporter

 1  A.   Well, what I reference in my report is a carbon
 2       dioxide monitors and alarms.  I never said just
 3       --
 4  Q.   **You also did refer to this specific one as one**
 5       **such simple solution; correct?**
 6  A.   The one in the picture.  I didn't pull down the
 7       information.  I don't know what --
 8  Q.   **But these are your words.  One such simple**
 9       **solution; correct?**
10  A.   Yes.
11  Q.   **So if this particular meter was in the chamber**
12       **on the night of the incident --**
13  A.   What I say:  Oxy-Health's failure to provide a
14       visual and audible indication that a dangerous
15       level of carbon dioxide or reduction oxygen
16       levels exists made the Oxy-Health Vitaeris 320
17       hyperbaric chamber defective, unreasonably
18       dangerous, unsafe for its intended use and the
19       cause of Jarred Sparks' asphyxiation.
20            So had a detector, a monitor, been in
21       there, whether it looked like this one that had
22       a visual and audible indication, the incident
23       probably would not have occurred.
24  Q.   **I appreciate that and I don't think I disagree**
25       **with you.  But my question is:  If Exhibit 33**