



Analysis
As of: Nov 24, 2014

**Valentin Fernandez, Plaintiff, Spar Tek Industries, Inc., Successor in Interest to Superior Production Machinery, Inc., Successor in Interest to Superior Plywood Machinery, Inc., Defendant.**

**C.A. No. 0:06-3253-CMC**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA, ROCK HILL DIVISION**

*2008 U.S. Dist. LEXIS 41520*; *76 Fed. R. Evid. Serv. (Callaghan) 784*

**May 23, 2008, Decided**

**SUBSEQUENT HISTORY:** Summary judgment granted by *Fernandez v. Spar Tek Indus., 2008 U.S. Dist. LEXIS 45393 (D.S.C., June 10, 2008)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff sought recovery against defendant manufacturer under theories of breach of warranty, negligence, and strict liability for injuries plaintiff suffered when his hand was caught in a piece of equipment used in the manufacture of plywood. The manufacturer moved to exclude the testimony of plaintiff's expert.

**OVERVIEW:** The challenged testimony related to the adequacy of safety devices on or between the charger and the press. The manufacturer challenged the adequacy of the factual basis of some of the expert's opinions and the standards which the expert applied to the known or presumed facts. Plaintiff failed to meet his burden of establishing that the expert's methodology provided an adequate basis for the expert's opinion under the Daubert and Kumho Tire standards. Even if the expert's methodology was found adequate under Daubert and Kumho Tire to support its general propositions, it remained inadequate to support the more specific opinions the expert offered. The court was neither convinced that the Occupational Safety and Health Administration (OSHA) regulations coupled with American National Standards Institute (ANSI) standards provided adequate support for the expert's testimony regarding guard requirements nor convinced that they did not. Therefore, ruling on whether the expert could offer expert testimony relating to guard requirements based on the combination of the OSHA regulation and ANSI standard was deferred.

**OUTCOME:** The court excluded the opinions of plaintiff's expert, except to the extent the expert's opinion was both related to guard requirements and was based on third-party standards. The manufacturer could renew its motion for exclusion as to the surviving aspects of the expert's proffered opinion after resolution of the motion for summary judgment, assuming the matter was not resolved by that motion.

**LexisNexis(R) Headnotes**

Case 5:13-cv-00649-FL    Document 36-18    Filed 11/24/14    Page 1 of 13

*Evidence > Testimony > Experts > Admissibility*
*Evidence > Testimony > Experts > Daubert Standard*
[HN1] The admission of expert testimony is governed by *Fed. R. Evid. 702* which provides as follows: If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*Evidence > Testimony > Experts > Admissibility*
*Evidence > Testimony > Experts > Daubert Standard*
[HN2] The plain language of *Fed. R. Evid. 702* requires a two part analysis. First, the court must determine whether the proffered expert is qualified to offer an opinion. This step focuses on the expert's training and experience. Second, the court must determine whether the proffered opinions satisfy the three numbered requirements listed in the rule. This step focuses on the opinions themselves, rather than the expert's qualifications.

*Evidence > Testimony > Experts > Admissibility*
*Evidence > Testimony > Experts > Daubert Standard*
[HN3] Five factors to apply in evaluating the reliability of an expert's opinions under *Fed. R. Evid. 702*: (1) whether a theory or technique relied on by the expert can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) whether there are standards controlling the operation of the theory or technique; and (5) whether the theory or technique enjoys general acceptance within a relevant scientific community. Similar factors and standards are used to evaluate the reliability of testimony offered by experts whose opinions were based on technical or other specialized knowledge.

*Evidence > Testimony > Experts > Daubert Standard*
*Torts > Products Liability > General Overview*
[HN4] In addition to clarifying the scope of Daubert, Kumho Tire reinforces principles established in cases interpreting *Fed. R. Evid. 702*. A plaintiff may not prevail in a products liability case by relying on the opinion of an expert unsupported by any evidence such as test data or relevant literature in the field.

*Evidence > Testimony > Experts > Admissibility*
[HN5] The plain language of *Fed. R. Evid. 702* requires that an expert opinion be based upon sufficient facts or data and that the expert apply the relevant principles and methods reliably to the facts of the case. *Fed. R. Evid. 702*. It follows that an opinion based on an inadequate or inaccurate factual foundation cannot be a reliable opinion, no matter how valid the principles and methods applied or how well-qualified the expert.

*Evidence > Testimony > Experts > Admissibility*
[HN6] An expert may rely on evidence which is not independently admissible. *Fed. R. Evid. 702 & 703*. This relaxation of the usual requirement of firsthand knowledge--a rule which represents a most pervasive manifestation of the common law insistence upon the most reliable sources of information--is presumably premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline. Differently stated, evidence considered by an expert, if not first hand, must be of the sort properly relied on by an expert in the field. A statement that the expert heard something from an unidentified source does not qualify as data of the sort on which an expert would normally rely. This is particularly true where the statement relied on constitutes part of the actual opinion being offered: that the chain was not on the original machines.

**COUNSEL:** [*1] For Valentin Fernandez, Plaintiff: William Paul Walker, Jr, LEAD ATTORNEY, Walker Morgan and Kinard, Lexington, SC.

For Spar-Tek Industries Inc, Successor in interest to Superior Production Machinery Inc and Successor in interest to Superior Plywood Machinery Inc, real party in interest Superior Production Machinery Inc, real party in interest Superior Plywood Machinery Inc, Defendant: Benson Hall Driggers, Mark Steven Barrow, LEAD ATTORNEYS, Sweeny Wingate and Barrow, Columbia, SC.

**JUDGES:** Cameron McGowan Currie, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Cameron McGowan Currie

**OPINION**

OPINION AND ORDER ON MOTION TO EXCLUDE EXPERT TESTIMONY

This matter is before the court on Defendant's motion to exclude the testimony of Plaintiff's expert, S. Melville McCarthy, P.E. This motion is granted in part for the reasons and to the extent set forth below.

**STANDARD**

[HN1] The admission of expert testimony is governed by *Rule 702 of the Federal Rules of Evidence* which provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify  [*2] thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

[HN2] The plain language of *Rule 702* requires a two part analysis. First, the court must determine whether the *proffered expert* is qualified to offer an opinion. This step, which is not at issue in this motion, focuses on the expert's training and experience. Second, the court must determine whether the *proffered opinions* satisfy the three numbered requirements listed in the rule. This step, which is at issue in this motion, focuses on the opinions themselves, rather than the expert's qualifications. *See generally Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579, 589, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)* (explaining trial court's gatekeeper function as requiring the "judge [to] ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable").

In *Daubert,* the Court set out [HN3] five factors to apply in evaluating the reliability of an expert's opinions under *Rule 702*: (1) whether a theory or technique relied on  [*3] by the expert can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) whether there are standards controlling the operation of the theory or technique; and (5) whether the theory or technique enjoys general acceptance within a relevant scientific community. *Daubert, 509 U.S. at 592-94* (noting that the approach is a flexible one). As to the fifth factor, the Court noted that "a known technique which has been able to attract only minimal support within the community . . . may properly be viewed with skepticism). Similar factors and standards are used to evaluate the reliability of testimony offered by experts whose opinions were based on technical or other specialized knowledge. *See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)*.

The *Daubert* and *Kumho Tire* requirements apply to disciplines such as mechanical engineering, which is the area of McCarthy's expertise. *See Oglesby v. General Motors Corp., 190 F.3d 244 (4th Cir. 1999)* (applying *Daubert* standards in affirming exclusion of testimony of mechanical engineer). As the Fourth Circuit explained in Oglesby, [HN4] "[i]n addition  [*4] to clarifying the scope of *Daubert, Kumho Tire* reinforces principles established in our cases interpreting *Federal Rule of Evidence 702*. We have admonished that 'a plaintiff may not prevail in a products liability case by relying on the opinion of an expert unsupported by any evidence such as test data or relevant literature in the field.'" *Id. at 249* (quoting *Alevromagiros v. Hechinger Co., 993 F.2d 417, 422 (4th Cir.1993)* and also citing *Freeman v. Case Corp., 118 F.3d 1011, 1016-17 (4th Cir.1997))*. [1]

1   Plaintiff relies on *Kopf v. Skyrm, 993 F.2d 374, 377 (4th Cir. 1993)*, as establishing a more liberal standard. Because this case was decided before *Daubert* or *Kumho Tire,* the court does not find it either binding or persuasive.

## NATURE OF ACTION

Plaintiff, Valentin Fernandez ("Fernandez"), seeks recovery under theories of breach of warranty, negligence, and strict liability for injuries he suffered on May 13, 2004, when his hand was caught in a piece of equipment used in the manufacture of plywood ("Press"). Fernandez asserts that Defendant, Spar Tek Industries, Inc. ("Spar Tek"), is liable for his injuries as the alleged corporate successor of Superior Production Machinery, Inc. and Superior   [*5] Plywood Machinery, Inc. (collectively "Superior"). Superior was the manufacturer of the Press and an associated piece of equipment called a Charger. [2] The Press and Charger left Superior's control in or around 1981.

2   The function of the Charger is to feed wood into the Press which, as the name suggests, uses heat and pressure to turn the wood into plywood.

The injury occurred after Fernandez entered the area between the Press and the Charger to clear a jam. While Fernandez was in this area, with his hand inside the Press, a co-worker activated the Press by depressing one of two buttons which served this purpose. The co-worker was a lineman, presumably present to do maintenance. (Fernandez was the sole operator of this Press and Charger.) It is not clear why the co-worker pressed the button, but it is presumed that he did not intend to injure Plaintiff.

The challenged testimony relates to the adequacy of safety devices on or between the Charger and the Press. For example, McCarthy opines that an "interlock chain," which Fernandez had to disconnect to enter the area between the Charger and the Press, was inadequate because it only cut off power to the Charger, leaving the Press operable.   [*6] McCarthy also opines that the Press was unsafe because it lacked any other form of guard. McCarthy also challenges the adequacy of warnings on the Press and Charger. Details of McCarthy's proffered opinions are addressed in the discussion below.

## DISCUSSION

The multiple grounds on which Spar Tek challenges McCarthy's proffered opinion fall into two categories. First, Spar Tek challenges the adequacy of the factual basis of some of McCarthy's opinions. Second, Spar Tek challenges the standards which McCarthy applied to the known or presumed facts. These challenges are discussed below. However, before addressing the specific opinions, the court will address several procedural issues relating to the briefing of this motion.

## I. Procedural Issues

Spar Tek filed its motion to exclude Fernandez's expert on February 25, 2008. The motion is supported by the required memorandum as well as substantial supporting materials. Dkt. No. 72.

Fernandez requested and was granted a substantial extension of time to respond. Dkt. No. 76 & 82 (seeking and later supporting request); Dkt. No. 77 & 84 (docket text orders requiring justification for and then granting extension). As allowed by the order granting the   [*7] requested extension, Fernandez filed his opposition memorandum on April 14, 2008. Dkt. No. 92 (opposition memorandum). This memorandum is superficial in its treatment of Spar Tek's arguments, challenging Spar Tek's general approach but failing to address its specific challenges.

Fernandez, likewise, fails to attach any prediction of evidence to support the arguments presented. For example, while Fernandez offers various arguments as to the meaning of challenged portions of McCarthy's deposition testimony, he does not provide any specific citations to McCarthy's deposition or report. Neither does he provide clarification in the form of an affidavit from McCarthy. Nothing in the memorandum refers the court to any other prediction of admissible evidence which might support a finding that McCarthy's proffered opinion satisfies the requirements of *Daubert.* [3]

3   The only citations to the record found in Fernandez's first opposition memorandum are multiple citations to Spar Tek's opening memorandum, several citations to the *defense* expert John Holecek's deposition, and one citation to McCarthy's deposition. The last citation is offered to demonstrate the alleged irrelevance of certain questions   [*8] proffered by defense counsel, not to demonstrate the reliability of McCarthy's proffered opinion or underlying theory.

Spar Tek filed a reply as allowed but not required by the local rules,. Dkt. No. 99; Local Civil Rule 7.07, D.S.C. Although multiple supporting materials are attached to the reply, they are primarily repetitive of materials filed with Spar Tek's opening memorandum. Nothing in the reply introduces new factual or legal bases for challenging McCarthy's opinion. Instead, the reply focuses on Fernandez's failure to respond to certain challenges and responds to those arguments which he did present. Spar Tek also expands one of its original arguments which relies on *Young v Tide Craft, Inc., 270 S.C. 453, 242 S.E.2d 671 (S.C. 1978)*.

Fernandez responded with a sur-reply, asserting that Spar Tek had made various misstatements of fact in the reply. Dkt. No. 101. In support of this claim, Fernandez attached two affidavits, one from McCarthy and one from a previously identified but then withdrawn expert, Brian Durig, Ph.D., P.E. Both of these affidavits are dated after the filing date of Spar Tek's reply.

In addition, Fernandez attached a document authored by McCarthy and titled "Safe  [*9] Design Methodology" (hereinafter "McCarthy Methodology"). This document was initially filed by Spar Tek and was discussed at length in Spar Tek's earlier memoranda. [4] *See* Dkt. No. 72-2 at 5-6 & 19-21 (opening memorandum ); Dkt. No. 72-7 (exhibit-McCarthy Methodology).

> [4]    Despite Spar Tek's focus on the McCarthy Methodology in its opening brief, this document is not even mentioned in Fernandez's original opposition memorandum. Only on sur-reply does Fernandez suggest that the Methodology may be a compilation of standards accepted in the industry as opposed to a standard of McCarthy's own creation. *See infra* at 17.

Fernandez also attached an excerpt from the National Safety Council's *Accident Prevention Manual* (4th Edition). This excerpt addresses proper characteristics of interlocking safety guards. It is not, however, discussed in McCarthy's affidavit. Neither are these particular pages of the *Accident Prevention Manual* cited as support for the McCarthy Methodology. [5]

> [5]    McCarthy's affidavit refers to the McCarthy Methodology and to two specific standards published by third parties: the American National Standards Institute ("ANSI"); and the Occupational Safety and Health Administration ("OSHA").  [*10] He does not directly refer to or appear to rely on the excerpt from the National Safety Council's *Accident Prevention Manual* which is attached to Fernandez's sur-reply. The specific pages of the Accident Prevention Manual provided are, moreover, different pages from those referenced in the "source" list contained in the McCarthy Methodology. Thus, the basis for including these pages as support for McCarthy's opinion is unclear.

Spar Tek responded with a brief objection to the sur-reply (Dkt. No. 103). In this objection Spar Tek challenges both the late submission of argument and the belated proffer of affidavits. As to the latter, Spar Tek notes that discovery is closed (presumably as a challenge to any attempt to expand the scope of expert opinion). It also notes that Durig was withdrawn as an expert, making reliance on his testimony particularly inappropriate.

Fernandez responded to Spar Tek's objection to the sur-reply. Dkt. No. 108. In this response to Spar Tek's objection (effectively a sur-sur-sur-reply), Fernandez addressed the propriety and permissibility of sur-replies generally, noting as follows:

> Ordinarily, sur-replies are intended to address issues newly raised in an opponent's  [*11] reply. . . . But in this case, Plaintiff has responded with affidavits to answer Defendant's *new attacks* on Plaintiff's expert witness, *especially with respect to the issue of whether the Plaintiff was in full view of his fellow worker* who engaged the press which injured him.

Dkt. No. 108 at 2-3 (emphasis added). Fernandez also asserts that allowing the late filed documents will not result in any prejudice to Spar Tek, although he does not explain why this is so. Dkt. No. 108 at 3.

Finally, Fernandez challenges Spar Tek's argument that the new affidavits should be excluded because discovery has closed. Fernandez notes that Spar Tek offered a post-discovery affidavit in support of summary judgment. He does not indicate whether the witness whose affidavit is proffered (Linda Whitehead) was newly identified or, if not, whether her proffered testimony went beyond what would fairly be anticipated based on prior disclosures.

**McCarthy Affidavit.** McCarthy's new affidavit sets forth two bases for his opinion that the machines in question lacked the interlock chain when they left Superior's control. First, he states that he relies on the absence of mention of an interlock chain in the machines' [*12] manual. He does not, however, challenge the veracity or relevance of Spar Tek's proffered evidence (from McCarthy's deposition) that McCarthy does not know whether the manual he reviewed in 2007 was the complete manual. [6]

> 6    To support McCarthy's inference, the manual would, presumably, need to be a complete copy or replication of the manual as it existed at the time of the machines' delivery in or about 1981.

Second, McCarthy asserts that he relied on the crude nature of the assembly. McCarthy affid. P 4 ( "A manufacturer of plywood manufacturing machinery would never have . . . installed such a crude easily defeated safety device that relied only on the weight of a common bolt to operate the interlock switch. Any bolt heavy enough could be used to operate the switch with no chain attached."). No basis other than his own subjective belief is offered for this opinion.

McCarthy next explains the distinction between two types of safety standards. The relevance of these two explanations is not immediately obvious, although they appear to be a further explanation of previously offered opinions. He then states as follows:

> 7. The [McCarthy Methodology] which I have provided in this case is not [*13] original with me. As shown by the extensive references to professional authorities which I make in that document, the safety rules which I offer in that document and in my deposition testimony are supported by generally accepted professional standards and have been peer reviewed. Even the defense expert, John Holecek, recognizes and accepts the [McCarthy Methodology] on page 40 and other pages throughout his deposition.

Dkt No. 101-4 at 2.

Although he refers generally to sources cited in his methodology, McCarthy does not provide any explanation of how the sources cited in the methodology support its general approach, much less any specific conclusion he may have reached based on the McCarthy Methodology. Neither does he provide copies of the sources cited in his methodology (none of which are specifically referenced in the affidavit). Similarly, McCarthy's one specific citation to Holecek's deposition is not supported either with a quotation of the specific testimony or with a copy of the cited page. The general reference to "other pages throughout [Holecek's] deposition is even more problematic as it amounts to nothing more than an unsupported claim that some excerpts from Holecek's [*14] deposition may be in accord with some aspects of McCarthy's Methodology.

Fernandez is incorrect in asserting that his sur-reply and related affidavits respond to arguments or factual issues newly raised in Spar Tek's reply. [7] All of the concerns addressed in Fernandez's sur-reply and McCarthy's belated affidavit were raised in Spar Tek's opening memorandum. For example, the opening memorandum challenged the adequacy of McCarthy's knowledge of the Press and Charger. *See* Dkt. No. 72-2 at 13 (noting McCarthy's lack of knowledge as to when the machines were manufactured, inability to state whether he had reviewed the complete manual and parts list, or knowledge of whether changes had been made since it was sold in 1981). In particular, Spar Tek noted that McCarthy conceded that the machines were likely not in substantially the same condition as when they were delivered in 1981, and believed that safety related changes had been made. Dkt. No. 72-2 at 12 (quoting McCarthy's deposition testimony that he "doubt[ed] seriously if [the Press was] in the same condition because it's an old machine[,]" and citing McCarthy's concession that he did not know if the chain or warnings were on the original [*15] machines). Spar Tek also pointed to errors in the factual basis for McCarthy's visibility opinion. [8] Likewise, the issue of the applicable standard (particularly regarding the McCarthy Methodology) was clearly raised in Spar Tek's opening memorandum.

> 7    In the sur-reply itself, Fernandez states that he is responding to "several misstatements of fact" contained in the reply. Dkt No. 101 at 1. In his response to Spar-Tek's objection to the sur-reply, he states that he is responding to "new attacks on Plaintiff's expert witness, especially with respect to the issue of whether the Plaintiff was in full view of his fellow worker who engaged the press which injured him." Dkt. No. 108 at 2-3.
> 8    After noting the discrepancies as to location, Spar Tek argued as follows: "It is obvious from this testimony that Mr. McCarthy does not understand what happened in the accident. He clearly appears to believe that the more distant power button was the one activated, which is belied by Fernandez's testimony. He, nonetheless, included an opinion about visibility. . . in his report, at Tab C." Dkt. No. 72-2 at 16.

Fernandez was given substantial additional time to respond to Spar Tek's opening memorandum, but [*16] did not seek to clarify McCarthy's opinions through deposition citation or affidavit submitted at that time. [9] He also failed to mention the McCarthy Methodology in his first opposition memorandum, despite Spar Tek's focus on deficiencies in that methodology in its opening brief.

> 9 As noted above, Fernandez cited only one passage from McCarthy's deposition in his initial memorandum in response to the motion to exclude. That passage related to OSHA regulations, and was cited for the apparent purpose of challenging the quality of the questions being posed, not for the purpose of supporting the quality or admissibility of McCarthy's opinions.

For all of these reasons, the court will not allow Fernandez to introduce the McCarthy affidavit on sur-reply. Neither will the court allow Fernandez to supplement or modify the opinions of his expert after the close of discovery, and particularly not through an affidavit filed as an attachment to a sur-reply to a motion to exclude. Therefore, the affidavit of McCarthy will be disregarded for purposes of this motion.

**Durig Affidavit.** Fernandez argues that his reliance on Durig's affidavit is appropriate for the following reasons:

> Mr. Durig is not being [*17] offered as an expert witness. In [his] interrogatory responses of April 11, 2007, Plaintiff stated that Mr. Durig would be testifying about his investigative report. Plaintiff's Answers to Spar-Tek's First Set of Interrogatories No. 5(c) (Exh. A). Mr. Durig's present affidavit also does nothing more than recite certain facts pertaining to what the accident site looked like. No expertise was claimed or relied on in making those assertions. They were offered solely to counter Defendant's assertion that Mr. McCarthy had his facts wrong about the site. As shown by Durig's affidavit, McCarthy's statements are not based [on] factual inaccuracies and are certainly plausible and with merit.

Dkt. No. 108 at 4.

Durig was withdrawn as an expert and cannot offer any expert opinion testimony in opposition to the present motion or at trial. *See* Dkt. No. 103-2 (letter confirming that Fernandez did "not intend to use Bryan Durig as an expert witness in this case"). For present purposes, the court will assume without deciding that Durig was also identified as a fact witness and that Spar Tek was not misled as to Fernandez's intent to rely on him as such. [10]

> 10 Fernandez identified Durig as a potential [*18] witness in his interrogatory responses. The list which included Durig's name did not distinguish between fact and expert witnesses but did list Durig's area of technical knowledge and state that he would testify regarding his investigation of the accident. *See* Dkt. No. 108-2 at 3-5 (interrogatory responses). This may suggest but does not require the conclusion that he would be offered *solely* as an expert. The subsequent withdrawal of Durig as an expert witness may, likewise, suggest withdrawal for all purposes although it does not require that conclusion. The intent of the withdrawal may, therefore, turn on what discussions were had between counsel regarding the purposes for which Durig might be called. The court is not privy to this information.

Even if Durig is allowed to offer fact testimony, particularly relating to line of sight, problems remain which would preclude McCarthy from claiming reliance on Durig's factual premises. The first problem is that there is no indication (at least in the materials before the court) that McCarthy relied on Durig's factual observations in forming his opinions regarding visibility. The second and greater problem is that Durig's testimony regarding [*19] visibility at the near button is contrary both to opinions which McCarthy offered in his deposition and to Fernandez's own testimony. [11]

> 11 In his deposition, McCarthy testified that there were two locations from which the Press could be activated, one a few feet away from Fernandez's position and the other some ten to fifteen feet away. McCarthy stated the closer position offered the co-worker clear visibility of Fernandez's location. He testified that the other location offered no visibility. Therefore, his opinion relating to visibility is based on his understanding that the co-worker was located at the more distant location. He offered no opinion relating to visibility at the near location.
>
> By contrast, Durig's affidavit acknowledges that the co-worker may have been at the closer location but suggest that the co-worker may possibly have been standing in a way that precluded visibility. This would not counter Spar Tek's argument that McCarthy lacked an adequate factual basis for his opinion (which assumes the co-worker was at the distant location). Instead, Durig's affidavit offers an entirely different factual basis (that the

co-worker was at the near location). It then proffers a [*20] new and different opinion from McCarthy's opinion regarding visibility at that near location.

In any event, neither McCarthy's nor Durig's opinions regarding visibility can be squared with Fernandez's own unequivocal testimony that the co-worker was not only at the near location but was *looking at* Fernandez. Fernandez would not have been able to see that the co-worker was looking at Fernandez if either worker's visibility was blocked.

Durig's affidavit is also untimely for the same reasons as McCarthy's affidavit: it was filed only with the sur-reply yet addresses issues raised in Spar Tek's opening memorandum. Under these circumstances, the court will not consider Durig's affidavit in resolving the present motion.

**Sur-reply Argument.** The text of the sur-reply is directed primarily to arguments based on the two belated affidavits. These arguments will not be considered for the reasons addressed above. The remainder of the arguments focus on matters raised in Spar Tek's opening memorandum and, therefore, are not the proper subject of sur-reply. Nonetheless, the court will consider the sur-reply to the extent it addresses issues on which Spar Tek offered expanded arguments in its reply.

The [*21] only such argument is Spar Tek's discussion of *Young v. Tide Craft, Inc., 270 S.C. 453, 242 S.E.2d 671 (S.C. 1978)*. As to this point, the court is inclined to agree with Fernandez that *Young* is more appropriately considered with respect to a motion on the merits, rather than in the context of the present motion. The court does not, therefore, rely on *Young* in resolving the present motion.

## II. Challenges to Factual Bases of McCarthy Opinion

[HN5] The plain language of *Rule 702 of the Federal Rules of Evidence* requires that an expert opinion be "based upon sufficient facts or data" and that the expert apply the relevant principles and methods "reliably to the facts of the case." *Fed. R. Evid. 702*. It follows that an opinion based on an inadequate or inaccurate factual foundation cannot be a reliable opinion, no matter how valid the principles and methods applied or how well-qualified the expert. For the reasons set forth below, the court finds that various aspects of McCarthy's proffered opinion should be excluded based on an inadequate or incorrect foundation.

### A. Visibility Due to Location of Co-worker

Fernandez was injured when a co-worker depressed a button which caused the Press to operate. McCarthy testified [*22] that he examined the machines and that there were two locations with a button which would cause the Press to operate. One was located ten to fifteen feet away and situated such that the operator would not have been able to see Fernandez. McCarthy dep. at 102-03. The other was located within two to three feet of where Fernandez was standing. McCarthy conceded that the operator would have been able to see Fernandez from this location. *Id.*

McCarthy's opinion relating to visibility at the far button lacks an adequate factual foundation because it is contrary to Fernandez's testimony that the co-worker was located only a few feet away and was looking at Fernandez when he pushed the button. *See* Dkt. No. 72-2 at 2 (quoting Fernandez's deposition). [12] His opinion relating to visibility at the near button will be allowed, as it is consistent with Fernandez's testimony. However, this opinion does nothing to advance Fernandez's case given that it simply confirms that a lack of visibility did not contribute to Fernandez's injury.

12 Fernandez testified, *inter alia,* "I pulled the chain out of the way and I went into the cage. And then I saw the operator, that he saw me that I was in there. And the [*23] only thing I could tell you is that I felt my hand being pressed." Dkt. No. 72-2 at 2 (quoting Fernandez dep. at 30-31). Asked again whether he saw the operator "press the button on Machine No. 1," Fernandez responded "Yes. Yes, I saw him." Dkt No. 72-2 at 2-3 (quoting Fernandez dep at 35-36). Asked how far away the co-worker was, Fernandez stated "Like you are there [from] me," then agreed that distance was two to three feet. Again, counsel asked "[w]as he looking at you?" and Fernandez responded "[y]es."

Fernandez argues that McCarthy should be allowed to offer an opinion relating to visibility at the far button because Fernandez's memory may be impaired as a result of the trauma of the injury. This argument is without a factual basis in two respects. First, neither Fernandez nor any psychological expert has opined that Fernandez, in fact, is confused. Second, there is no other testimony which would suggest that the co-worker was, in fact, at the more distant loca-

tion. For both reasons, the court concludes that McCarthy's opinion that a lack of visibility may have contributed to the accident is without an adequate factual basis.

Even were the court to consider the recently offered [*24] affidavit from Durig, it would reach the same result. In the critical portion of his affidavit, Durig opines as follows:

> 7. Likewise, even though the first operator station is at the charger/press interface, it is positioned in a way that makes it certainly *possible* for an operator to stand in front of the station, especially if approaching from the charger side, press the operation button, and still not be able to see whether or not someone is working between the charger and the press.

> 8. In view of the location of the work stations and the area of access to the charger and the press, it was *possible* for Mr. Fernandez to have seen the *lower extremity* of his co-worker's body as the latter stood at the operator station. It is also *possible* that while Mr. Fernandez could see his co-worker, the co-worker may not have seen him.

Dkt No. 104 PP 7-8 (emphasis added).

The facts suggested by Durig's affidavit do not support McCarthy's opinion because McCarthy's opinion was based on the presumption that the operator was located at the more distant location. McCarthy did not opine based on an alternative possibility that the co-worker was in the closer location. Any other use of this affidavit would [*25] be for the purpose of introducing an altogether new opinion, which is not only contrary to the evidence, but comes entirely too late in the proceedings. [13]

> 13    Durig's affidavit suggests a *new* opinion, be it fact or lay opinion, that the co-worker's visibility *may* have been impaired even at the nearer location. Even if not precluded by the delay in offering it, this "opinion" would not be admissible because it speaks only of possibilities. Those possibilities are, in any event, contrary to Fernandez's unequivocal testimony for reasons discussed above.

## B. Other Foundational Concerns

Fernandez has failed to adequately respond to Spar Tek's other arguments relating to the factual basis for McCarthy's opinions. Most critical is McCarthy's assumption regarding the condition of the Press and Charger at the time they left Superior's control. As Spar Tek notes, McCarthy conceded that the machines would most likely not have been in the same condition at the time of Fernandez's injury in 2004 as when sold in 1981 by Superior. Dkt. No. 72-2 at 12 (quoting McCarthy dep. at 178). [14] McCarthy also opined that the interlock chain and at least one warning had been added. These opinions are contrary to [*26] any presumption that the machines remained in the same condition as when delivered.

> 14    To establish his negligence or strict liability claims, Fernandez must prove that the machines were in substantially the same condition at the time of Fernandez's injury (2004) as when it left Spar Tek's control (1981). This proof may be made through an expert or otherwise. McCarthy's inability to prove that the machines were in an unchanged condition does not, therefore, necessarily impair his ability to testify on other points.

McCarthy's opinions regarding the condition of the machines at the time of delivery are also without adequate evidentiary support. For example, McCarthy's opinion that there was no interlock chain on the original machines was based on the condition of the chain on the machines on the date of Fernandez's injury which he opined appeared "jerry-rigged." Even if this characterization is adequate to support an inference that this particular chain was either new or a replacement, it would not support the further inference that there was no chain on the original machines. This would amount to the prohibited building of one inference upon another. It is equally probable that the new [*27] safety device replaced some other safety device. Thus, any backward flowing inference would be mere speculation.

McCarthy also purports to rely on the absence of any reference to the interlock chain in the manual or parts list in opining that the chain (and presumably no similar or other safety device) was present when the machines left Spar Tek's control. The foundational difficulty with this argument is that McCarthy conceded in his deposition that he did not know if he had the complete manual and parts list, particularly as they existed in 1981. Dkt. No. 72-2 at 13. Fernandez

might arguably have cured this difficulty by producing other evidence which supports the conclusion that what McCarthy reviewed was, in fact, a complete manual and parts list as they existed in 1981. He has not, however, done so. [15]

> 15   In his recently filed affidavit, McCarthy states that his opinion is based, in part, on the absence of mention in the manual. He does not, however, challenge Spar Tek's reference to his affidavit concession that he did not know if he had the complete manual.

McCarthy's testimony that he "heard" from some unidentified source that the chain was added, does nothing to cure the deficiency  [*28] in the foundation for his corresponding opinion. Dkt No. 99 at 7. If anything, this reference to hearsay from a source McCarthy could not even recall raises additional doubts as to the foundation for McCarthy's opinion. This is because he may have allowed this non-specific statement from an unidentified source to influence his opinion. [16]

> 16   [HN6] An expert may rely on evidence which is not independently admissible. *See Fed. R. Evid 702 & 703*. As explained in *Daubert*, "this relaxation of the usual requirement of firsthand knowledge-a rule which represents "a 'most pervasive manifestation' of the common law insistence upon 'the most reliable sources of information,'" Advisory Committee's Notes on *Fed. Rule Evid. 602*, 28 U.S.C. App., p. 755 (citation omitted)-is [presumably] premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." *Daubert, 509 U.S. at 592*. Differently stated, evidence considered by an expert, if not first hand, must be of the sort properly relied on by an expert in the field. A statement that the expert heard something from an unidentified source does not qualify as data of the sort on which an expert  [*29] would normally rely. This is particularly true where, as here, the statement relied on constitutes part of the actual opinion being offered: that the chain was not on the original machines.

## III. Reliability Under Daubert Factors

In addition to challenging the adequacy of the factual foundation for various aspects of McCarthy's opinion, Spar Tek challenges the standards which McCarthy applied in forming his opinions. These challenges fall into three categories: (1) challenges to McCarthy's chosen framework for determining the adequacy of safety measures; (2) challenges to McCarthy's failure to apply accepted industry standards in determining adequacy of safety measures; and (3) challenges to McCarthy's reliance on standards issued by the Occupational Safety and Health Administration ("OSHA").

**McCarthy Methodology.** Spar Tek first argues that most if not all of McCarthy's opinions are based on standards which appear to be of his own creation and which have not been peer reviewed, tested, or received wide acceptance in his field. These standards are set forth in the McCarthy Methodology (*supra* at 5) which states the following standard among others: "A product's design must include means to  [*30] positively prevent human exposure to all severe hazards whenever technically and economically feasible without totally defeating the utility of the product." Dkt No. 72-7.

Fernandez did not address this argument in his original response. Indeed, he did not mention the McCarthy Methodology in that memorandum despite Spar Tek having included significant challenges to that methodology in its opening memorandum. *See* Dkt No. 72-2 at 5-6 & 17-20. Spar Tek also challenged McCarthy's reliance on general but unspecified safety standards. *See* Dkt No. 72-2 at 7 (quoting McCarthy dep. at 93-95).

It is only through his sur-reply that Fernandez offers support for the position that the standards set out in the McCarthy Methodology are not original with McCarthy. However, the support for this position is only offered in the form of a generic statement in McCarthy's affidavit that the McCarthy Methodology is "supported by generally accepted professional standards [which have] been peer reviewed," and an assertion that the McCarthy Methodology has been accepted by Spar Tek's expert. The extent to which Spar Tek's expert has accepted the McCarthy Methodology is not explained. The only support for any acceptance  [*31] is a citation to one page of the defense expert's deposition. That page is neither quoted nor provided as an attachment.

As noted above, McCarthy's affidavit is offered too late to be considered. However, even if considered, the court would find these generic statements of general acceptance insufficient to support a finding of reliability under *Daubert*.

Fernandez also seeks to support McCarthy's reliance on the McCarthy Methodology through argument offered for the first time in his sur-reply. Most critically, Fernandez argues that there are twelve independent sources cited in McCarthy's Methodology, suggesting (as does McCarthy in his affidavit) that the McCarthy Methodology is merely a compilation of other sources. The first problem with this argument is that the twelve listed sources are not linked to any specific statement or premise in the McCarthy Methodology. Neither does Fernandez provide copies of these documents

to the court, so that it might determine the veracity of his claims of support. Another problem is that three of the twelve cited sources are dated more recently than 1981, which is the critical date for testing whether the machines met relevant standards. [17] For all   [*32] of these reasons, the court concludes that Fernandez has failed to meet his burden of establishing that the McCarthy Methodology provides an adequate basis for McCarthy's opinion under the *Daubert* and *Kumho Tire* standards.

> 17    Whatever theory is applied, Superior's obligation to deliver safe machines must be tested as of the date the machines left Superior's control.

Even if the McCarthy Methodology was found adequate under *Daubert* and *Kumho Tire* to support its *general* propositions, it would remain inadequate to support the more *specific* opinions McCarthy has offered in this case (*e.g.,* that the interlock chain should have cut off power to the Press and a guard should have been included on the Press). This is, in part, because the general standards contained in the McCarthy Methodology are what they purport to be: general standards. They provide no specific standard on which an expert might decide that a particular guard or other safety device was or was not required (or adequate) on a particular machine in a particular era (here in or before 1981). [18] Allowing such generic theory to support specific opinions negates the requirements of *Daubert* and pays mere lip service to this court's   [*33] gatekeeper role.

> 18    Fernandez argues, *inter alia,* that McCarthy should be allowed to rely on the McCarthy Methodology because other accepted industry standards, such as those published by ANSI, are not *alone* determinative. *See* Dkt. No. 92 at 1-2. For example, a manufacturer which recognizes a serious risk not covered by an ANSI standard may have a duty to protect against that risk. The court will assume without deciding that a duty beyond those set forth in a single specific standard may be imposed on a manufacturer, particularly where it is aware of an otherwise unknown risk. This does not, however, mean that an expert's opinion should be accepted where it is *based solely on the expert's own philosophy, rather than on some generally accepted standard.* In any event, Fernandez has not shown that the risks at issue in this case were not generally known and addressed by generally accepted standards at the relevant time (1981).

In addition, McCarthy fails to properly apply the McCarthy Methodology to the facts of this case because he does not address his own proposed limitations on the requirement that the machines be designed to "positively prevent human exposure to all severe hazards."   [*34] As the McCarthy Methodology notes, such positive prevention methods are not required if they are not "technically and economically feasible without totally defeating the utility of the product." McCarthy's proffered opinion fails to address technical and economic feasability or the impact on utility of his proposed safety features.

For all of the reasons set forth above, the court will exclude McCarthy's opinion to the extent based on the McCarthy Methodology. Having reached this conclusion the court need not decide to which legal theories the McCarthy Methodology might be applied. [19]

> 19    The applicable standards would, presumably, vary depending on which of Fernandez's three legal theories was at issue (warranty, negligence, or strict liability). The McCarthy Methodology, by contrast, offers a single standard which does not appear to be linked to any specific legal theory. Whatever difficulties this might present need not be resolved in light of the exclusion of reliance on the McCarthy Methodology for any purpose.

**Failure to Apply or Rejection of Industry Standards.** As Spar Tek notes, McCarthy conceded that the interlock chain in place at the time of Fernandez's injury satisfied the ANSI   [*35] standard published in or before 1981. *See* Dkt. No. 72-2 at 5; McCarthy dep. at 70-71. Fernandez's argument that this is only a minimum standard and other standards could require more fails because Fernandez offers no reference to any other accepted industry standard. *See supra* n. 18. Instead, Fernandez appears to rely solely on the McCarthy Methodology which is rejected for reasons set forth above.

Accordingly, the court concludes that McCarthy has failed to provide an adequate basis for his opinion that the interlock chain in place at the time of Fernandez's injury failed to satisfy the standard applicable when the machines left Superior's control in 1981. Whether the chain was in place in 1981 or added later is of no relevance to the question of Superior's failure to meet an applicable standard of care. [20]

> 20    McCarthy also opined that the chain was an addition after the date of manufacture, suggesting that the Press and Charger failed to meet even the pre 1981 ANSI standard at the time of delivery. For reasons discussed above, McCarthy's opinion in this regard is without adequate factual foundation. Even if allowed, this opinion

would not support Fernandez's claims because the absence [*36] of a chain in 1981 could not be a cause of Fernandez's 2004 injury if the required chain was added in the interim. To the extent McCarthy's testimony on this point is relevant, it goes only to the question of whether the machines were in the same condition in 2004 as when delivered in 1981.

**Warnings.** McCarthy also opined that the warnings on the machines were inadequate. He did not, however, provide reference to any generally accepted standard which would support the requirement for any specific warning which he contended was absent. Neither did he provide a factual basis for concluding that the absence of any specific warning was a cause of Fernandez's injury or that any warning which might have prevented Fernandez's injury was absent when the machines were delivered in or around 1981. [21]

> 21   Warnings which arguably could have prevented the accident might, for example, include a warning near the button which the co-worker pushed alerting that co-worker to the related risks or a warning near the interlock chain advising Fernandez that the disconnection of the chain would not cut off power to the Press. The possibility that adding such warnings (assuming that they were absent) would have [*37] prevented Fernandez's injury depends on whether they would have been read and understood and whether the warning would have imparted knowledge not otherwise known or at least served as a reminder of a known warning. The possibility that a posted warning would have alerted Fernandez to a specific risk is reduced by the fact that does not read English. The record is also apparently silent as to whether any warning would have imparted knowledge to Fernandez which he did not already possess. The court has not been provided with information relating to the co-worker's state of knowledge of the risks, ability to read, or what warnings were present near the button which the co-worker pressed to activate the Press.

**OSHA Regulations and Absence of Guard on Plywood Press.** McCarthy relies on Section 5.2 of ANSI 01.1 in support of his opinion that the Plywood Press should have included a guard. The general statement in Section 5.2 acknowledges that standards for guarding are not universally applicable to all operations and suggests that the "enforcing authority" allows for flexibility in meeting any applicable standards. While this statement supports the premise that flexibility should be allowed [*38] in applying the guarding standards, it does not provide the court with any underlying standard to which the flexibility would be applied. Thus, this standard does not provide support for McCarthy's expert opinion when considered alone.

McCarthy does not, however, rely solely on this general standard. He also relies on *29 C.F.R. § 1910.212 (1971)* which provides more specific guarding requirements. This Occupational Safety and Health Administration ("OSHA") regulation was enacted pursuant to the Occupational Safety and Health Act ("OSH Act"). Therefore, it is directly applicable to an *employer's* duty to provide a safe workplace. *See generally 29 U.S.C. §§ 651(b) & 654.*

Whether OSHA regulations may be relied on to establish standards applicable to manufacturers in a strict liability or negligence action brought by an injured worker has not been directly addressed by the Fourth Circuit. [22] Three other circuits have held that OSHA regulations are not directly applicable to manufacturers. [23] However, at least one of the same circuits has suggested that OSHA regulations may be some evidence of the standard of care applicable to a manufacturer in a negligence action. [24] Spar Tek's expert may [*39] also have acknowledged that OSHA regulations might play a role in establishing standards applicable to a manufacturer. *See* Dkt. No. 92 at n.1 (Fernandez memorandum quoting defense expert). [25]

> 22   The closest Fourth Circuit decision which this court has located is *Mullinax v. Bepex Corp., 917 F.2d 1302, 1990 U.S. App. LEXIS 19945, 1990 WL 173788 (4th Cir 1990)* (unpublished opinion), in which a manufacturer sought indemnification from an employer after settling with an injured employee. Addressing the manufacturer's reliance on OSHA regulations, the court stated as follows: "*Since [the manufacturer] would not be liable to [the employee] for actions of [the employer] claimed on account of violations of OSHA,* it follows that [the employer] has no duty of indemnification to [the manufacturer] relating to [the employer's] actions . . . ." *1990 U.S. App. LEXIS at *5* (emphasis added).
> 23   *See Lindsey v. Caterpillar, Inc. 480 F.3d 202, 208 (3d Cir. 2007)*, *Minichello v. U.S. Industries Inc., 756 F.2d 26, 29 (6th Cir. 1985)*, *Johnson v. Niagara Mach. & Tool Works, 666 F.2d 1223, 1226, (8th Cir. 1981)*.
> 24   *See Bailey v. V & O Press Co., Inc., 770 F.2d 601, 608-09 (6th Cir. 1985).*
> 25   Because Fernandez did not provide the cited deposition pages, the court cannot [*40] determine the context of this statement.

In light of the above, the court is neither convinced that OSHA regulations coupled with ANSI standards provide adequate support for McCarthy's testimony regarding guard requirements nor convinced that they do not. The court will, therefore, defer ruling on whether McCarthy may offer expert testimony relating to guard requirements based on the combination of the OSHA regulation and ANSI standard.

Assuming the action is not otherwise resolved on summary judgment, Spar Tek may renew this aspect of its motion to exclude McCarthy's testimony through motion in limine. Such motion may be filed at any time after the motion for summary judgment is resolved.

**CONCLUSION**

For the reasons set forth above, the court excludes the opinions of Fernandez's expert, S. Melville McCarthy, P.E. except to the extent McCarthy's opinion is *both* related to guard requirements and is based on third-party standards (*i.e.* ANSI standards and OSHA regulations, not the McCarthy Methodology). Spar Tek may renew its motion for exclusion as to the surviving aspects of McCarthy's proffered opinion after resolution of the motion for summary judgment, assuming the matter is not resolved   [*41] by that motion.

IT IS SO ORDERED.

/S/ Cameron McGowan Currie

CAMERON MCGOWAN CURRIE

UNITED STATES DISTRICT JUDGE

Columbia, South Carolina

May 23, 2008