IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| Amy Sparks, individually, and Robert D. Sparks, as Personal Representative of the Estate of Jarred B. Sparks,<br><br>Plaintiffs,<br><br>vs.<br><br>Oxy-Health, LLC and Oxy-Health Corporation,<br><br>Defendants. | Civil Action No.: <u>5:13-CV-00649-FL</u><br><br><br>**<u>ORDER GRANTING PLAINTIFFS'<br>MOTION TO EXCLUDE THE<br>TESTIMONY OF DEFENSE EXPERT<br>DR. STEVEN R. ARNDT</u>** |

This case involves the wrongful death of Jarred Sparks in an OxyHealth Vitaeris 320 hyperbaric chamber ("Vitaeris 320") after the quick disconnect valve providing the only source of fresh air into the chamber disengaged. OxyHealth marketed the Vitaeris 320 for self-treatment; for home use; and for use by individuals with autism despite the fact that the Vitaeris 320 was cleared by the FDA for marketing for Acute Mountain Sickness only. (*See, e.g.,* Operating and Reference Manual, pp.3, 9; Dep. of Janet Presson, dated Feb. 26, 2014, pp.177-78; FDA 510(k), K001409 (Aug. 2, 2000) (cleared to market for intended use: "to provide mild hyperbaria for the treatment of Acute Mountain Sickness"). On September 12, 2013, Plaintiff Amy Sparks, individually, and Robert D. Sparks, as Personal Representative of the Estate of Jarred B. Sparks ("Plaintiffs") filed a Complaint in this Honorable Court alleging causes of action for: Inadequate Design, Inadequate Warning, Negligence and Negligent Failure to Warn, Breach of Implied Warranty of Merchantability, Breach of Express Warranty, Unfair and Deceptive Trade Practices, and Negligent Infliction of Emotional Distress. The Defendants filed an Answer and subsequently filed an Amended Answer on December 12, 2013. On November

24, 2014, Plaintiffs filed the instant Motion to Exclude the Testimony of Defense Expert Dr.

Steven R. Arndt ("Motion to Exclude") pursuant to *Daubert v. Merrell Dow Pharmaceuticals,*

*Inc.,* 509 U.S. 579 (1993). For the following reasons, the Court grants Plaintiffs' Motion to

Exclude in its entirety.

## FACTUAL BACKGROUND

The Plaintiffs have retained three experts to offer opinions in this matter:

- **W.T. Workman**, MS, CAsP, CHT-A, FAsMA (An expert in the FDA clearance of hyperbaric chambers; compliance to recognized industry safety standards; and regulations for hyperbaric chambers);
- **Ronald J. Natoli, Jr**., P.E., C.F.E.I (An expert and licensed Mechanical Engineer qualified to testifying about product design and selection of materials pursuant to engineering standards); and
- **Nancy Grugle**, PH.D. (A Human Factors expert focusing on Warning and Instruction Design)

The Defendants have offered Dr. Arndt to rebut the opinions of the Plaintiffs' experts in all of

these areas of expertise. However, Dr. Arndt admitted at his deposition that he has always "held

that [his] experience, training, and knowledge is in the area of human factors," and he has no

intention to testify different at the trial of this matter. (Dep. of Dr. Arndt, dated Oct. 30, 2014, at

45). Dr. Arndt defines human factors as the study of the capabilities and limitations of people as

they interact with their environment, tools, technology, organizations, and other individuals. *Id.*

at 12. Unlike Mr. Workman, Dr. Arndt is not an expert in hyperbaric technology; has never

designed a hyperbaric chamber; and had never personally seen a hyperbaric chamber prior to this

litigation. *Id.* at 12-13. Unlike Mr. Natoli, Dr. Arndt is not a licensed professional engineer, and

readily admits that the design of a product and the selection of materials are beyond his

expertise. *Id.* at 42, 259. Unlike Dr. Grugle, Dr. Arndt does not subscribe to the generally

accepted objective methodology applied in the field of Human Factors when it comes to Warning

and Instruction Design. *See id.* at 144-45.

2

## **APPLICABLE LAW**

A challenge to expert testimony requires a judicial determination of admissibility pursuant to Federal Rule of Evidence 104(a). The proponent of the testimony must establish its admissibility by a preponderance of proof. *Cooper v. Smith & Nephew, Inc.,* 259 F.3d 194, 199 (4th Cir. 2001). In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), the United States Supreme Court held that the express language of the pertinent Federal Rules of Evidence places appropriate limits on the admissibility of purportedly scientific evidence by requiring the trial judge to ensure that an expert's testimony rests on a reliable foundation. *See id.* at 597; *see also Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999) (extending "gatekeeping" obligation to testimony based on "technical" or "other specialized" knowledge). Accordingly, the *Daubert* standard requires that the district court act as a gatekeeper to assess whether evidence or expert testimony to be admitted is both sufficiently <u>reliable</u> and <u>relevant</u>. *See Daubert,* 509 U.S. at 589; *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir. 1999).

In the Fourth Circuit, expert testimony is admissible under Rule 702 "if it concerns (1) scientific, technical, or other specialized knowledge that (2) will aid the jury or other trier of fact to understand or resolve a fact at issue." *Westberry,* 178 F.3d at 260 (citing *Daubert*, 509 U.S. at 592). "The first prong of this inquiry necessitates an examination of whether the reasoning or methodology underlying the expert's proffered opinion is reliable—that is, whether it is supported by adequate validation to render it trustworthy." *Id.* "The second prong of the inquiry requires an analysis of whether the opinion is relevant to the facts at issue." *Id.*

"A reliable expert opinion must be based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using . . . valid methods." *Oglesby v. Gen. Motors Corp.,* 190 F.3d 244, 250 (4th Cir. 1999); *Daubert***,** 509 U.S.

3

at 590 (Expert opinions must be based on "more than subjective belief or unsupported speculation."). The touchstone of the relevancy prong is whether the testimony will be helpful to the jury. *Daubert,* 509 U.S. at 591-92 (Rule 702's "helpfulness" standard "requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."); *see United States v. Harris,* 995 F.2d 532, 534 (4th Cir. 1993) ("As Rule 702 indicates, expert testimony is only permitted if it assists the trier of fact to understand evidence or to determine a fact in issue."). The consideration of relevance requires the district court to determine whether the testimony "fits" the case at hand, as not all *reliable* expert testimony is *relevant* expert testimony. *Garlinger v. Hardee's Food Sys., Inc.*, 16 F. App'x 232, 235 (4th Cir. 2001) (citing *Daubert,* 509 U.S. at 591 ("Scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes."). The relevance inquiry assures that the expert's proposed testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue" as required by Rule 702.

"Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *Daubert,* 509 U.S. at 595. Expert testimony that has a greater potential to mislead than to enlighten should be excluded. *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999).

**DISCUSSION**

Opinion #1 in Dr. Arndt's Report states "There was sufficient information in the form of warnings and instructions available to the Plaintiffs that, if read and followed, the incident would not have occurred." (Arndt Report, p.6). However, this opinion is scientifically unreliable, based on mere subjective belief and unsupported speculation, and unfairly prejudicial to the Plaintiffs.

As a result, it must be excluded. Without knowing how long it took Jarred to asphyxiate inside the chamber, there is no objective methodology to determine whether the Sparks' following of any instructions would have prevented the incident in this case. For example, Jarred could have asphyxiated in the chamber despite the fact that someone "regularly" checked on him, depending on how soon after being put into the chamber the quick disconnect valve disengaged and how long it took for him to asphyxiate inside the chamber with no supply of fresh air and no way for expelled $CO_2$ to exit the chamber. Any opinion by Dr. Arndt in this regard would be pure speculation based on his subjective belief and must be excluded. *See Oglesby v. Gen. Motors Corp.,* 190 F.3d 244, 250 (4th Cir. 1999) ("[a] reliable expert opinion must be based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using . . . valid methods."); *Daubert*, 509 U.S. at 590 (Expert opinions must be based on "more than subjective belief or unsupported speculation.").

Opinion #2 in Dr. Arndt's Report states "There was sufficient information in the form of verbal instructions available to the Plaintiffs that, if complied with, the incident would not have occurred." (Arndt Report, p.8). However, this opinion is nothing more than Dr. Arndt's own speculative subjective belief. Dr. Arndt's opinion is based on speculation about verbal instructions that Dr. Arndt *believes* the Sparks *would have* received. There is absolutely no support in the record for this opinion. In fact, Dr. Arndt's belief about verbal instructions available to the Sparks directly conflicts with the lack of instructions as evidenced by the record in this case. Because Dr. Arndt's opinions are "based on assumptions which are speculative and are not supported by the record," they must be excluded. *Tyger Const. Co. Inc. v. Pensacola Const. Co.,* 29 F.3d 137, 142 (4th Cir. 1994); *see Daubert,* 509 U.S. at 591 (the proffered

testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.").

Opinion #3 in Dr. Arndt's Report states "If the air hose becomes disconnected, sufficient cues are available to alert an attendant or to alert a reasonably attentive, non-autistic, self-treating individual." (Arndt Report, p.10). At his deposition, Dr. Arndt testified that "there is a detectable difference between the sound the chamber makes when it's exhausting through the two vent ports versus when air is coming out of the supply chamber; and there is an absolute spatial separation between the sources of the sound. . . . [I]t is a marked change in sound, both in sound quality, sound volume, and sound location, when the hose becomes disconnected." (Arndt Dep., pp.204-05). Dr. Arndt admitted that he "just used [his] own two ears" in reaching that conclusion. *Id.* at 205. Notably, he admits that the jury would be able to make these determinations with their own ears. The purpose of expert testimony is to assist jurors in understanding complex subjects which are outside the realm of common knowledge. *See Persinger v. Norfolk & Western Ry.,* 920 F.2d 1185, 1188 (4th Cir. 1990) (Expert testimony is inadmissible if "within the common sense and everyday knowledge of the jurors."). The district court has broad discretion to decide whether expert testimony is helpful to the jury, or whether it instead is within the common knowledge of the jurors or would be unfairly prejudicial, confusing, misleading, or cumulative under Rule 403. *See United States v. Dorsey*, 45 F.3d 809, 814-15 (4th Cir. 1995) (If the proposed testimony is within the realm of common sense and the jurors' own faculties, it is not an appropriate subject for an expert witness). Because Dr. Arndt admits that the jury can reach the same conclusions that he intends to testify by using their own two ears, his testimony must be excluded

6

Opinion #4 in Dr. Arndt's Report states "An ANSI Z535-compliant warning at the head of the chamber related to the potential for the quick disconnect valve to disconnect, as proposed by Plaintiffs' expert, Dr. Grugle, would not have prevented this incident. Additional information, as suggested by Plaintiff's experts, would not have prevented this incident." (Arndt Report, p.12). In summary, Dr. Arndt states "[g]iven that Mrs. Sparks and Dylan did not believe it was necessary to monitor Jarred in the chamber during treatments [and] were not seeking information regarding safe use of the product, no additional or alternative information in the Operating and Reference Manual or on the product itself would have prevented this incident." *Id.* at 16. Dr. Arndt's opinion is that "this incident still would have occurred regardless of what specific warning was placed on the product itself." (Arndt Dep., p.239). This opinion falls within the area of "likelihood of compliance." However, Dr. Arndt acknowledged that "there are articles in the human factors literature where testing has been done by some of the gentlemen [] talked about today to try and determine, through actual testing, what the likelihood of compliance would be with a given warning" and admitted that in the past he has "done testing to determine likelihood of compliance also." (Arndt Dep., pp.147-48). Despite that practice, he conceded that he has not done any testing, with respect to the facts in this case, concerning issues relating to warnings compliance involving the Sparks family. *Id.* at 148 ("No. I haven't used the facts in this case to do any testing of warnings compliance."). As a result, the reasoning underlying his opinions is devoid of any methodology and unsupported by "adequate validation to render it trustworthy." *Westberry*, 178 F.3d at 260. Because this opinion is based on nothing "more than subjective belief or unsupported speculation," it must be excluded. *Daubert*, 509 U.S. at 590; *see Oglesby v. Gen. Motors Corp.,* 190 F.3d 244, 250 (4th Cir. 1999) ("[a] reliable expert

opinion must be based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using . . . valid methods.").

Opinion #5 in Dr. Arndt's Report states "There was no scientific basis for Hyperbaric Technologies or for Oxy-Health to change their design." (Arndt Report, p.16). This subject area is clearly, and admittedly, outside of Dr. Arndt's alleged qualifications. First and foremost, Dr. Arndt admits that he is not a licensed professional engineer, and the design of a product and the selection of materials are beyond his expertise. (Arndt Dep., pp.42, 259) ("[T]he choice of a valve, and the design of the product, is now getting a little bit beyond the realm of human factors, when you're talking about the actual component selection."). Additionally, Dr. Arndt is not an expert in hyperbaric technology; has never designed a hyperbaric chamber; and had never personally seen a hyperbaric chamber prior to this litigation. *Id.* at 12-13. Because Dr. Arndt admits that the design of the hyperbaric chamber is beyond his expertise, Opinion #5 must be excluded.

Opinion #6 in Dr. Arndt's Report states "The training provided to Dylan Sparks was insufficient to allow him to operate the chamber in a proficient manner." (Arndt Report, p.19). Dr. Arndt is not qualified to testify about what is and what is not proper training to operate a hyperbaric chamber. Dr. Arndt has never trained anyone in how to operate a hyperbaric chamber; in fact, he had never operated a chamber himself prior to this case. (Arndt Dep., pp.263-64). Notably, Dr. Arndt's testimony in this area is more likely to mislead than to enlighten the jury and must be excluded. *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999).

Opinion #7 in Dr. Arndt's Report states "The ASME PVHO-1 and NFPA 99 standards identified by Plaintiffs' experts were voluntary standards. These standards did not require

redesign of the quick disconnect or inclusion of oxygen or carbon dioxide monitoring." (Arndt Report, p.21). This intended testimony concerns the following issues: (1) whether or not ASME-PVHO-1 and NFPA 99 safety standards were applicable to the Vitaeris 320, (2) FDA clearance of Class II medical devices for marketing, and (3) the design and fabrication of hyperbaric chambers, including the selection of proper materials for construction. Dr. Arndt admittedly is not qualified to testify on any of these topics; therefore, his Opinion #7 will not "assist the trier of fact to understand the evidence or to determine a fact in issue" and must be excluded. *See United States v. Harris*, 995 F.2d 532, 534 (4th Cir. 1993) ("As Rule 702 indicates, expert testimony is only permitted if it assists the trier of fact to understand evidence or to determine a fact in issue.") At the very least, Dr. Arndt will only mislead and confuse the jury in these areas, and his testimony must be excluded under Rule 403 to prevent unfair prejudice. *See Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999).

Opinion #8 in Dr. Arndt's Report states "The CO2 sensor proposed by Plaintiffs' experts would not function in the chamber environment. Plaintiffs experts have not identified a CO2 sensor that would have prevented this incident." (Arndt Report, p.23). This opinion should be excluded as both irrelevant and misleading. *See Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). Plaintiffs' expert Ron Natoli testified that:

> Oxy-Health's failure to provide a visual and audible indication that a dangerous level of carbon dioxide or reduced oxygen levels exists made the Oxy-Health Vitaeris 320 hyperbaric chamber defective, unreasonably dangerous, unsafe for its intended use and the cause of Jarred Spark's asphyxiation. So had a detector, a monitor, been in there, whether it looked like this one that had a visual and audible indication, the incident probably would not have occurred.

(Dep. of Ron Natoli, dated July 17, 2014, p.270). Dr. Arndt is not an engineer and has failed to demonstrate that a $CO_2$ monitor with an audible alarm would not have prevented this incident. As such, Opinion #8 should be excluded in its entirety.

The objective of the *Daubert* "gatekeeping" requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999). Dr. Arndt's conclusory approach in this case does not satisfy that level of scrutiny. Even the opinions that Dr. Arndt intends to offer in the broader field of Human Factors contradict undisputed facts in this case, will not help the jury understand or resolve a fact at issue, and consist of misleading, unreliable speculation. To the extent that Dr. Arndt's opinions have any probative value, it is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

## CONCLUSION

Based on the foregoing, this Court **GRANTS** Plaintiffs' Motion to Exclude the Testimony of Defense Expert Dr. Steven R. Arndt. Specifically, Dr. Arndt's opinions are hereby excluded in their entirety.

**IT IS SO ORDERED.**

This ___ day of _____ 201__.

_____
LOUISE W. FLANAGAN
UNITED STATES DISTRICT JUDGE