## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

| | | |
|---|---|---|
| Amy Sparks, individually, and Robert D. Sparks, as Personal Representative of the Estate of Jarred B. Sparks, | ) ) ) | Civil Action No.: <u>5:13-CV-00649-FL</u> |
| | ) | |
| Plaintiffs, | ) ) | **ORDER GRANTING PLAINTIFFS'** |
| | ) | **MOTION TO EXCLUDE CERTAIN** |
| vs. | ) | **"EXPERT" TESTIMONY OF PETER** |
| | ) | **LEWIS** |
| Oxy-Health, LLC and Oxy-Health Corporation, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## FACTUAL BACKGROUND

This case involves the wrongful death of Jarred Sparks in an OxyHealth Vitaeris 320 hyperbaric chamber ("Vitaeris 320") after the quick disconnect valve providing the only source of fresh air into the chamber disengaged. On September 12, 2013, Plaintiff Amy Sparks, individually, and Robert D. Sparks, as Personal Representative of the Estate of Jarred B. Sparks ("Plaintiffs") filed a Complaint in this Honorable Court alleging causes of action for: Inadequate Design, Inadequate Warning, Negligence and Negligent Failure to Warn, Breach of Implied Warranty of Merchantability, Breach of Express Warranty, Unfair and Deceptive Trade Practices, and Negligent Infliction of Emotional Distress. The Defendants filed an Answer and subsequently filed an Amended Answer on December 12, 2013. On December 1, 2014, Plaintiffs filed the instant Motion to Exclude Certain "Expert" Testimony of Peter Lewis ("Motion to Exclude") pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). For the following reasons, the Court grants Plaintiffs' Motion to Exclude.

## APPLICABLE LAW

A challenge to expert testimony requires a judicial determination of admissibility pursuant to Federal Rule of Evidence 104(a). The proponent of the testimony must establish its admissibility by a preponderance of proof. *Cooper v. Smith & Nephew, Inc.,* 259 F.3d 194, 199 (4th Cir. 2001). In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), the United States Supreme Court held that the express language of the pertinent Federal Rules of Evidence places appropriate limits on the admissibility of purportedly scientific evidence by requiring the trial judge to ensure that an expert's testimony rests on a reliable foundation. *See id.* at 597; *see also Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999) (extending "gatekeeping" obligation to testimony based on "technical" or "other specialized" knowledge). Accordingly, the *Daubert* standard requires that the district court act as a gatekeeper to assess whether evidence or expert testimony to be admitted is both sufficiently <u>reliable</u> and <u>relevant</u>. *See Daubert,* 509 U.S. at 589; *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir. 1999).

In the Fourth Circuit, expert testimony is admissible under Rule 702 "if it concerns (1) scientific, technical, or other specialized knowledge that (2) will aid the jury or other trier of fact to understand or resolve a fact at issue." *Westberry,* 178 F.3d at 260 (citing *Daubert*, 509 U.S. at 592). "The first prong of this inquiry necessitates an examination of whether the reasoning or methodology underlying the expert's proffered opinion is reliable—that is, whether it is supported by adequate validation to render it trustworthy." *Id.* "The second prong of the inquiry requires an analysis of whether the opinion is relevant to the facts at issue." *Id.*

"A reliable expert opinion must be based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using . . . valid methods." *Oglesby v. Gen. Motors Corp.,* 190 F.3d 244, 250 (4th Cir. 1999); *Daubert***,** 509 U.S.

at 590 (Expert opinions must be based on "more than subjective belief or unsupported speculation."). The touchstone of the relevancy prong is whether the testimony will be helpful to the jury. *Daubert,* 509 U.S. at 591-92 (Rule 702's "helpfulness" standard "requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."); *see United States v. Harris,* 995 F.2d 532, 534 (4th Cir. 1993) ("As Rule 702 indicates, expert testimony is only permitted if it assists the trier of fact to understand evidence or to determine a fact in issue."). The consideration of relevance requires the district court to determine whether the testimony "fits" the case at hand, as not all *reliable* expert testimony is *relevant* expert testimony. *Garlinger v. Hardee's Food Sys., Inc.*, 16 F. App'x 232, 235 (4th Cir. 2001) (citing *Daubert,* 509 U.S. at 591 ("Scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes."). The relevance inquiry assures that the expert's proposed testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue" as required by Rule 702.

"Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *Daubert,* 509 U.S. at 595. Expert testimony that has a greater potential to mislead than to enlighten should be excluded. *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999).

## DISCUSSION

Peter Lewis intends to offer testimony at the trial of this case that the OxyHealth Vitaeris 320 chamber at issue in this case is safe because it was approved for sale by the FDA through the 510(k) process. Peter Lewis' opinion that the OxyHealth Vitaeris 320 is safe is based on his mere "belief" that the FDA reviews the safety and effectiveness of a Class II device during the

510(k) clearance process. (Peter Lewis Dep., p.99). In fact, the FDA does not evaluate the safety and effectiveness of a Class II device during the 510(k) clearance process. "A reliable expert opinion must be based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999). The reasoning underlying Peter Lewis' opinion that the OxyHealth Vitaeris 320 is safe is not supported by "adequate validation to render it trustworthy" and must be excluded. *Westberry*, 178 F.3d at 260. Similarly, any opinions by Peter Lewis as to what the FDA reviewed during the 510(k) process must be excluded because any such testimony would be pure speculation; thus, "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *See United States v. Dorsey*, 45 F.3d 809, 813 (4th Cir. 1995).

Further, Peter Lewis intends to testify that:

- HTI tested several similar quick disconnect valves and that it was determined that a force of between 3 and 4 pounds was necessary to release the quick disconnect valve;

- HTI attempted to recreate the incident using another chamber with a quick disconnect valve and placing the point of a 3/8" bolt in the center of the push button quick disconnect valve and there "is no scientific evidence to support any device failure and that the device operated within specifications"; and

- At the time the quick disconnect valve disengaged, "there would have been at least sufficient air to finish one treatment."

He intends to testify that it would have taken between 3 and 4 pounds of pressure to disengage the quick disconnect valve from the chamber. Specifically, he testified at his deposition that "the connector was measured separately, not attached to anything. And the measurement was done on how many pounds of pressure that had to be exerted on the button to make it pop to disconnect. . . . And it was three-and-a-half pounds." (Peter Lewis Dep., p.201). However, when he was asked how that testing was set up, what equipment was used, and how was that pressure

measured, he did not know. *Id.* at 202. This is because Peter Lewis is not an engineer and did not conduct the testing: in fact, he testified that a "mechanic" performed this testing. *Id.* As such, the reasoning and methodology underlying this testing is not supported by adequate validation to render it trustworthy." *Westberry*, 178 F.3d at 260.

It is also important to note that results of testing these 5 valves "not attached to anything" conflicted with the results of HTI's "testing" of one of these valves connected to a chamber at their plant during their attempts to recreate the incident, which resulted in the quick disconnect valve disengaging with only 1 pound of pressure. *Id.* at 199-201. It is undisputed that the quick disconnect valve that disconnected on the OxyHealth Vitaeris 320 leading to Jarred's death was connected to a chamber at the time that it disconnected. Any testimony by Peter Lewis about a "mechanic's" testing of five exemplar quick disconnect valves unattached to a Vitaeris 320 chamber does not "fit" the case at hand and will not "assist the trier of fact to understand the evidence or to determine a fact in issue" as required by Federal Rule of Evidence 702. *Garlinger v. Hardee's Food Sys., Inc.*, 16 F. App'x 232, 235 (4th Cir. 2001); *Daubert*, 509 U.S. at 591-92 ("Rule 702's helpfulness standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."). Similarly, any testimony by Peter Lewis concerning HTI's attempts to recreate this incident are unreliable and are properly excluded.

Finally, Peter Lewis intends to testify that, at the time the quick disconnect valve disengaged, "there would have been at least sufficient air to finish one treatment." However, Mr. Lewis' opinion is based on something that a hyperbaric technician allegedly told him with respect to a different, smaller chamber years prior to this incident. While the amount of time a particular person could survive in the chamber after the quick disconnect valve disengages is something that could possibly be calculated, Mr. Lewis admitted that he "can only speculate on

trying to figure that out" in this case because there are variables that one would need to have to do the calculation that no one knows about this incident. Because Mr. Lewis' opinions are "based on assumptions which are speculative and are not supported by the record," they must be excluded. *Tyger Const. Co. Inc. v. Pensacola Const. Co.,* 29 F.3d 137, 142 (4th Cir. 1994); *see Daubert,* 509 U.S. at 591 (the proffered testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.").

## CONCLUSION

Based on the foregoing, this Court **GRANTS** Plaintiffs' Motion to Exclude Certain Expert Testimony of Peter Lewis. Specifically, Peter Lewis's testimony (1) that the OxyHealth Vitaeris 320 hyperbaric chamber ("Vitaeris 320") is "safe" or (2) concerning subsequent testing or attempts to recreate the incident is hereby excluded.

**IT IS SO ORDERED.**

This ___ day of _____ 201__.

_____
LOUISE W. FLANAGAN
UNITED STATES DISTRICT JUDGE