# EXHIBIT 2

Case 5:13-cv-00649-FL    Document 45-3    Filed 12/01/14    Page 1 of 9

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Civil Action No. 5:13-cv-00649-FL

---

VIDEOTAPE DEPOSITION OF:
NANCY L. GRUGLE, Ph.D. - July 21, 2014

---

AMY SPARKS, individually, and ROBERT D. SPARKS, as
Personal Representative of the ESTATE OF JARRED B.
SPARKS,

Plaintiffs,

v.

OXY-HEALTH, LLC and OXY-HEALTH CORPORATION,

Defendants.

---

PURSUANT TO NOTICE AND SUBPOENA, the videotape deposition of NANCY L. GRUGLE, Ph.D., was taken on behalf of the Defendants at the Hampton Inn DIA, 6290 Tower Road, Evergreen Room, Denver, Colorado 80249, on July 21, 2014, at 8:52 a.m., before Marchelle Hartwig, Certified Shorthand Reporter and Notary Public within Colorado.

Sparks vs. Oxy-Health         Nancy Grugle         7/21/2014

Page 138

Q.   Okay.  But if somebody would have noticed that there was a problem, they could have prevented it, correct?

A.   Depending on how soon they noticed it, it's possible.

Q.   And if the $CO_2$ hadn't have built up inside, then there wouldn't have been a death, correct?

MR. SWETT:  Object to form.

A.   Well, if the $CO_2$ caused the asphyxiation and there was no $CO_2$ issue, then he would not have asphyxiated.

Q.   (BY MR. CHIGNELL)  Okay.  But you agree that if somebody would have picked up on the fact that there was a problem before he asphyxiated, that they could have essentially prevented or potentially prevented the incident?

A.   It depends on if they knew -- if they were able to determine what the problem was and fix it in time.

Q.   Okay.  Do you believe that had the label that you have on page 15 of your report -- had that label been on the chamber in the location where you have it, do you believe that would have prevented this incident?

Sparks vs. Oxy-Health          Nancy Grugle          7/21/2014

Page 139

A.     It would have provided the users of the chamber with the information that they needed to safely operate the chamber with respect to the quick disconnect valve.

Q.     **But that assumes that they would have read it, correct? If they wouldn't have read it, then they wouldn't have -- they wouldn't have known?**

A.     Unless they read it in the manual.

Q.     **Right.**

A.     Or were trained on it.

Q.     **Okay. But back to my original question: Do you believe that including that warning sticker on the end of the chamber where you have it there on page 15 of your report would have prevented this incident?**

A.     It would have provided them with the information that they needed to prevent the quick disconnect valve from disconnecting and causing the asphyxiation, and if they read it and if they complied, it would have prevented it.

Q.     **Okay. But if either they wouldn't have read it or if they wouldn't have complied with it, then you agree that the same thing could have occurred?**

A.     The purpose of the warning label is to

provide them with the information so that they can effectively comply. And so without it, they certainly can't.

And as we stated earlier, if it's available, if it's conspicuous, if it's explicit, if it attracts attention, if it meets the criteria of an effective warning, then the encounter with the hazard is minimized. Can I guarantee that 100 percent of all users will read it? No. But the point is that if it doesn't have the information, they can't comply. They can't read it if it's not there.

Q. **I'm just trying to figure out what you're going to say at trial, and I want to know: Are you going to testify at trial that if this warning would have been on the chamber, that Jarred would be alive? Are you going to provide that testimony?**

MR. SWETT: Object to form. Asked and answered.

A. So I'm going to repeat my previous answer. This warning provided -- was adequate and provided sufficient information for the Sparks to understand the severity of the hazard, the consequences of encountering the hazard and how to avoid the hazard. Without that information, they could not comply. And so without this warning, it

could not have been prevented.

I can't guarantee that every user will read a warning label, but without this information, it's not possible to prevent it from an inadvertent disconnection of the quick release valve.

Q.   (BY MR. CHIGNELL)  Okay.  And I understand and I appreciate that opinion.  I'm just trying to figure out if you're going to take it one step further by saying that inclusion of the warning label that you have on page 15 would have prevented Jarred's death.  What I hear you saying is -- I don't hear -- it doesn't sound like you're willing to go that far.  I just want to make sure that I'm correct.

MR. SWETT:  Object to form.

Q.   (BY MR. CHIGNELL)  Are you willing to say -- are you willing to take that extra step and say that putting the label on the chamber would have prevented the death?

MR. SWETT:  She has already testified to that.

MR. CHIGNELL:  She hasn't answered that question.

MR. SWETT:  She said if they would have read it and if they would have complied, yes, it would have prevented his death.

Sparks vs. Oxy-Health            Nancy Grugle            7/21/2014

Page 142

MR. CHIGNELL: And I'm trying to figure out if she's going to take it further by saying that they would have read it and they would have complied.

MR. SWETT: She says that in her deposition testimony, Amy says that.

A. As we talked about earlier, I cannot guarantee that every user will read and comply with the warnings, but what I can do is provide them with information that they need so that they can avoid the hazard.

Q. (BY MR. CHIGNELL) And I get that. I mean, what you're saying is that if they would have put this information on the chamber, then that is -- and then had it been read and followed, that would have given them the information that they needed.

But my question is -- I'm just trying to take it one bridge further. I'm just trying to figure out if you're going to testify at trial that Jarred Sparks would be alive today if this warning had been put on the chamber. Are you going to testify at trial that he would be alive today if the warning that you have on page 15 would have been included on the chamber?

A. If either Dylan or Mrs. Sparks had read it and complied with it as it is designed, they would

Sparks vs. Oxy-Health          Nancy Grugle          7/21/2014

Page 143

have had the information available to them to prevent this.

Q.   Okay.  And I 100 percent agree with you on that.  We're on the same page, but that's not the question.

The question is:  Are you willing to say that Jarred would be alive today had that warning been on the chamber?  And by repeating your prior answer, my inference is that you're not willing to go that far, which is also fine.  I'm just -- I'm entitled to know what you're going to testify about at trial.  And I just want to make sure that when I go back and talk to my client, I correctly represent what you will and will not say at trial.

MR. SWETT:  Why don't you rephrase it, because there is a lot of circumstances that go into whether somebody would still be alive.  If you want to ask -- it's your deposition.  I can ask this when I get up, but the -- in your opinion, did the lack of this warning contribute -- substantially contribute --

MR. CHIGNELL:  That's not the question I'm trying to ask.

MR. SWETT:  Well, I'm going to ask that.

MR. CHIGNELL:  And that's fine.  I'm just trying to figure out whether or not she is going to

Sparks vs. Oxy-Health          Nancy Grugle          7/21/2014

Page 144

testify at trial if Dylan (sic) Sparks would have successfully made it out of the chamber that night had this warning been on the end of the chamber.

A.    So like I said before, without this information, it was a contributing factor to Jarred Sparks' death.  The example that I provide isn't an example of an adequate and effective warning.  It would have given the information to the users that they needed to prevent this particular incident from occurring.  I cannot guarantee that someone will read it or comply with it.  But without it, they do not have the information that they need to prevent it.

MR. CHIGNELL:  Okay.  And I'll ask it just to make sure that I fully understand, because I'm entitled to an answer.  If she doesn't want to answer, that's fine.

MR. SWETT:  She's answered it.  She answered the question.

MR. CHIGNELL:  No, she has not.

Q.    **(BY MR. CHIGNELL)  The question is -- and I believe it's a yes-no answer.**

MR. SWETT:  You want to ask her based on the evidence in the case?

MR. CHIGNELL:  No.  I want to ask her -- I don't care what she bases it on.  I just want to