# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Civil Action No. 5:13-cv-00649-FL

------------------------------------
AMY SPARKS, individually, and
ROBERT D. SPARKS, as Personal
Representative of the ESTATE
OF JARRED B. SPARKS,

               Plaintiffs,

   vs.

OXY-HEALTH, LLC AND
OXY-HEALTH CORPORATION,

               Defendants.
------------------------------------

DEPOSITION

OF

LAURA LAWYER, MSW, LCSW

Taken by Defendants
Fayetteville, North Carolina
September 12, 2014

Reported by:  Tracy D. Daniels, RPR
                  Notary Public

during that first visit that there was some type of expression of survivor's guilt?

A. Yes.

Q. **What do you recall her telling about that?**

A. Let me review my note really quickly, please. What I remember from the first session, and it's noted, was she said that Jarred was not just her son, he was my life. Those were her words. It's so painful, I cry every day. That was pretty much the extent of it then.

I think in a later session she goes on a little bit further. Let me find that. And on February 7 she talks about her son's upcoming birthday April 24th, Jarred, her son, and being really hard -- quote, really hard for me. And what I was doing in those -- session 1 through 3 is getting that history, the historical information before we attacked the traumatic event that she was presenting for. So I think what you're talking about is a little later.

In session 4, she talks about feeling deceased son's birthday will generate and feels ill equipped to deal with continued grief that does not seem to be reduced on any level per

Depositions, Inc.
info@NCDepo.com    www.NCDepo.com    (919) 557-4640
Case 5:13-cv-00649-FL    Document 45-5    Filed 12/01/14    Page 3 of 8

client. Client knows that she can see her son's eyes and other things that used to be blocked out from her memory. She still kept the light on upstairs. Let's see where she talks about it. Okay. Here it is. Client noted her role as mother and as protector demonstrates that she was a failure due to her being unable to provide her son -- protect her son, sorry, and keep him safe from harm in their home. Client has survivor's guilt on a deep level. Client reports she feels lazy and negligent as a mother and lazy and negligent as a mother were in quotes.

Q. **So those were her words?**

A. Those were her words.

Q. **What did she share with you about that?**

A. Just that she was very tired that night and she was downstairs, and so she replays it in her mind, "what if?" What if I'd have gone and done this and this? What if? And so she has so constantly -- and we worked on that saying he had logged hundreds of hours in there. Even if you had gone and checked on him, it doesn't mean you would have caught it. If a tube fell out or didn't fall out or whatever, like you cannot second guess yourself all the time. It's not

Case 5:13-cv-00649-FL   Document 45-5   Filed 12/01/14   Page 4 of 8

going to help you emotionally or mentally.

So that was the one thing. And the fact that as a parent you think of your job, which we talk about as being a protector, keeping them safe. The house is supposed to be safe. And yet he not only was just a child, but he was a special needs child so she felt even more connected to him because he needed her so much more so than her other two children. Like he needed her to teach him how to hug, how to make eye contact, and toilet training way letter than most children. So the work that she put into him was way -- a much greater amount compared to the other two. So, therefore, she felt he needed a great deal more of protection that she didn't feel she gave him.

Q. Did she -- did she talk to you about how the -- what caused Jarred to suffocate inside the chamber?

A. She talked about what she thought happened.

Q. And what did she -- that was you said Jarred moved around inside the chamber. I believe that's --

A. She said she thought that Jarred had moved around in the chamber and she thought that

Depositions, Inc.
info@NCDepo.com      www.NCDepo.com      (919) 557-4640
Case 5:13-cv-00649-FL     Document 45-5     Filed 12/01/14     Page 5 of 8

the oxygen -- some valve, and I don't know because I don't know that chamber, that an oxygen valve or two had come loose.

Q.    Did she share with you how that could have happened or anything else that related to that at that point?

A.    She stated that she since learned that there wasn't a safety valve on that to prevent that from occurring and that that needed to happen to prevent future incidents like this.

Q.    Okay.

A.    That's all she shared that I recall.

Q.    As far as the survivor's guilt, she was -- her guilt was based on the fact that she wasn't protecting him?

A.    Uh-huh.  From dying.

Q.    That was your understanding; is that correct?

A.    Yes.

Q.    Okay.  She used the -- I guess the word -- you have these words in quote, lazy and neglect as a mother.  What did -- did she describe anything to you that you would -- I mean, lazy and negligent as a mother is something that I guess not a lot of people say.  Did she flush that out

for you at all? Give you get examples of why she felt that way?

A. Well, when we do EMDR what we try to do is we -- well, we ask clients. Not try. We ask clients to tell us their negative cognition, which when you think about this incident, what do you think about yourself? "I am" in the present, like what emotions come up for you now? I'm what? I'm negligent, I'm lazy. So, I prompted her to give me that based on -- because any time anything happens, it gives an individual a message about themselves, whether they realize it consciously or subconsciously.

So that was her message to herself. Whether or not it's accurate, factually, that's how she felt, so that's where the trauma and the grief comes in is dealing with that cognition, that negative cognition.

Q. And did you talk to her about the reasons -- I mean, as far as the specific reasons that she -- that she -- why she may have thought that she was like negligent or lazy?

A. I did.

Q. And what did she say?

A. She said because she was so tired, she

Depositions, Inc.
info@NCDepo.com          www.NCDepo.com          (919) 557-4640
Case 5:13-cv-00649-FL    Document 45-5    Filed 12/01/14    Page 7 of 8

laid down. And I believe it was that Dylan had put him in the chamber, if I'm not mistaken, and I can't be certain of that. But I believe that's what she was feeling negligent about; I as a mom, I should have gone up there and done it. I shouldn't have let Dylan do it. And I'm going off memory. That's not here.

Q. **Sure. And had Dylan done it before, to your knowledge?**

A. From my understanding, they were all in the family very -- she said they logged hundreds of hours, they were all very familiar with doing that. It wasn't anything uncommon.

Q. **So she was at least expressing to you some concern about having the son do it as opposed to her doing it herself?**

MR. SWETT: Objection to form. Mischaracterizing testimony.

Q. **Well, you can go ahead. If I misunderstood it, I just want to make sure that I understand it as accurately as possible from you.**

A. She said her concern was that she should have done it as a mom herself and not put that on Dylan because now Dylan has to live with whatever he's living with, like I was the last one

Case 5:13-cv-00649-FL    Document 45-5    Filed 12/01/14    Page 8 of 8