# EXHIBIT 7

Case 5:13-cv-00649-FL     Document 45-8     Filed 12/01/14     Page 1 of 7

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NORTH CAROLINA

WESTERN DIVISION

AMY SPARKS, INDIVUALLY,   )
AND ROBERT D. SPARKS, AS   )
PERSONAL REPRESENTATIVE OF)
THE ESTATE OF JARRED B.    )
SPARKS,                  )  Case No. 5:13-CV-00649-FL
                      )
       Plaintiffs,   )
                      )
   vs.             )
                      )
OXY-HEALTH, LLC AND     )
OXY-HEALTH CORPORATION,  )
                      )
       Defendants.   )
_____)

30(b)(6) DEPOSITION OF THE PERSON MOST

KNOWLEDGEABLE FROM OXY-HEALTH, LLC AND OXY-HEALTH

CORPORATION, SAMIR PATEL, taken on behalf of

Plaintiffs, at 9801 Airport Boulevard, Los Angeles,

California, commencing at 9:34 A.M. on Wednesday,

September 17, 2014, before SHANNA GRAY, Certified

Shorthand Reporter Certificate No. 13690.

—   —   —

MAGNA LEGAL SERVICES

(866) 624-6221

www.magnaLS.com

**MAGNA** ❯

LEGAL SERVICES

Q. Yes.

A. To sell hyperbaric chambers.

Q. Okay.

A. That's a vague question, but...

Q. But just in general, what's the business of Oxy-Health, LLC?

A. We sell hyperbaric chambers.

Q. What's the relationship between Oxy-Health, LLC and HTI?

A. They are manufacturers, and we are their distributors.

Q. And that's how you classify the relationship?

A. Yes.

Q. Okay.

A. That's how they will classify it as well.

Q. Do you have an opinion on how the FDA may classify the relationship?

A. Exactly that.

Q. And that's based on what?

A. Their website. We're registered as a distributor for their product.

Q. Okay. And is it your understanding that all of that information is self-reported to the FDA? They rely on what's reported to them when they put who the manufacturer of a product is, who the distributor is; is

THE WITNESS: I mean, I sell the chamber so marketing is a broad form of thing, too, but, yes, I suppose.

BY MR. SWETT:

Q. **We've already testified that you sell these chambers to consumers and resellers, correct?**

A. I sell them to consumers that use them, and I sell them to physicians that may resell them, but I don't consider them as resellers. They're not agents of mine. They're not bound to buy from me.

Q. **Well, you sell to other entities who are not physicians that you are fully aware are going to turn around and resell chambers, correct?**

A. Correct.

Q. **How would you classify those? I don't want to use the wrong term. I said resellers. How would you classify those individuals?**

A. Just as if I would sell you a chamber at a discount, and if you choose to sell it to your neighbor, that's your business. But I -- you're not a distributor of mine. You're not an agent of mine.

Q. **Okay. I want to use the right term. How would you classify VitaO2?**

A. They buy at discount and resell.

Q. **Is it not fair to classify -- to call them a**

reseller?

A. I have zero -- no contract with them.

Q. Okay. But you have an ongoing relationship. They continuously buy chambers from you and resell them, correct?

A. The more you buy, the better the discount I give you. That's it. That's pretty much what it is. There's no agreement with VitaO2.

Q. Do you have other entities similar to VitaO2 who buy a lot of chambers from you and resell them to consumers?

A. I used to have one other one in the U.S., but that's it.

Q. Okay.

A. And that's out of business.

Q. And you don't have any written agreement with them or VitaO2, correct?

A. I do not. I have no written distributor agreements within the U.S.

Q. So is it fair to say that you have nothing in writing with those two entities requiring them to provide a user manual to the consumers to whom they sell Oxy-Health hyperbaric chambers?

A. Every single chamber has to, by law, ship out -- when we ship out has to have a manual in it when HTI

would send it to his committee and approve it.

Q. Okay.

A. You've got to recall -- understand that every word is scrutinized by his committees. So I can suggest the world to him, but he will run it through his committees.

Q. What -- how do you see Oxy-Health's role? I understand -- if I understand sort of through two conversations now with you, you view HTI as the fabricator of these chambers; is that fair?

A. They're the manufacturer.

Q. Yeah, you view them as a manufacturer?

A. They're registered as manufacturers with HTI -- FDA, rather. We are distributors. They build them. We sell them. But they own them. They control everything. I just have sales rights.

Q. Do you view yourself as -- do you view Oxy-Health as solely a distributor?

A. Absolutely.

Q. How about a marketer?

MR. CHIGNELL: I'll object. Go ahead. You can answer.

When you say solely a distributor as opposed to -- I think we've already in other testimony got that, but go ahead. Just for the...

that.

Q. And it's your testimony that Oxy-Health is not a manufacturer of the Vitaeris 320 hyperbaric chamber, correct?

A. Correct. Come to our office and you'll never see any manufacturing equipment, nothing.

Q. Well, let me ask you to look at page 35 of the user manual.

A. 35.

Q. I'll just read the first sentence into the record. "All portable mild hyperbaric chambers come with a one-year manufacturer's warranty parts and labor from the date of purchase by Oxy-Health Corporation for any manufacturer defects." Did I read that correctly into the record?

A. Yes.

Q. So Oxy-Health is offering a manufacturer's warranty for the Vitaeris 320 hyperbaric chamber, correct?

A. So it is -- if you read the words right, this one --

Q. Wait, wait. Didn't I just ask you if I read the sentence correctly?

A. It's correct, yes.

Q. Okay. So I did read it right?

A. Yes.