# EXHIBIT 11

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No.: 5:13-cv-00649-FL

---

AMY SPARKS, individually, and        :
ROBERT D. SPARKS, as Personal        :
Representative of the ESTATE         :
OF JARRED B. SPARKS,                 :
                                     :
    Plaintiffs,                     :
                                     :
vs.                                  :
                                     :
OXY-HEALTH, LLC and                  :
OXY-HEALTH CORPORATION,              :
                                     :
    Defendants.                     :

---

VIDEOTAPED DEPOSITION OF

ROBERT D. SPARKS

Taken by the Defendants
Fayetteville, North Carolina
October 3, 2014

Reported by:  Eileen M. Dunne,
              Court Reporter and
              Notary Public

Case 5:13-cv-00649-FL   Document 45-12   Filed 12/01/14   Page 2 of 8

speculation.

A.    Can -- can you -- I don't understand what you're asking.

Q.    Yeah.  So, I mean -- so if you have a -- if you have a thing that you're working on and you're not sure how it works or if you, you know -- if you have a piece of equipment that you're not familiar with, and there is an instruction manual that comes with it, do you generally read the instruction manuals?

A.    Pertaining to my work, yes.

Q.    Okay.  What about pertaining to your non-work life?

A.    No.

Q.    Okay.  Did you ever read the instruction manual that came with the hyperbaric chamber?

A.    I flipped through it maybe.  I don't even remember if I even did that.

Q.    Okay.  And when would you have flipped through it?

A.    I don't recall.

Q.    Do you recall flipping through it before the incident with Jarred where -- where he was in the chamber?

A.    I don't recall if I did.

Depositions, Inc.
info@NCDepo.com          www.NCDepo.com          (919) 557-4640
Case 5:13-cv-00649-FL     Document 45-12     Filed 12/01/14     Page 3 of 8

seen any of the promotional material published by Oxy-Health?

A. No.

Q. Prior -- prior to leasing the chamber from the Pressons, had you ever gone onto the Oxy-Health website?

A. I don't remember if I ever did.

Q. Okay. How -- and how about after you leased the chamber from the Pressons, have you ever been on the Oxy-Health website?

A. No, not that I can recall.

Q. And sitting here today, have you ever been -- even as of today, have you ever been on the Oxy-Health website?

A. I may have. I may have. I'm not sure.

Q. Do you know when that would have -- that may have occurred?

A. No.

Q. Before or after Jarred's death?

A. If I was on it at all --

Q. Yes.

A. -- I would say before maybe. I don't -- I don't remember.

Q. Okay. Do you recall --

A. I don't recall even ever being on it, but I

Depositions, Inc.
info@NCDepo.com          www.NCDepo.com          (919) 557-4640
Case 5:13-cv-00649-FL     Document 45-12     Filed 12/01/14     Page 4 of 8

think I may have looked at something on there.

Q. Okay. Do you remember what you looked at?

A. No.

Q. Have you ever gone on YouTube to look at any of the Oxy-Health videos that are available on YouTube?

A. No.

Q. At any time?

A. No, never.

Q. Did you ever talk to your wife about any of the Oxy-Health materials that she may or may not have seen?

A. Just when we were trying to locate them. That's the only time I really talked to her about it.

Q. When you were trying to locate what?

A. The materials. The owner's manual, whatever.

Q. Was this after Jarred's death?

A. Yes.

Q. How about beforehand; do you ever remember talking to Amy about any promotional materials that you may have seen prior to Jarred's death?

A. No. I don't remember talking to her about it.

Q. And sitting here today, do you know if your

A. No.

Q. **Okay. Had you read that instruction when you got the chamber from the Pressons, would you have acted differently?**

A. What do you mean acted --

MR. SWETT: Object to form.

A. -- differently?

MR. SWETT: Calls for speculation.

BY MR. CHIGNELL:

Q. **Would you --**

MR. SWETT: He wasn't even there on the -- on the night. This is irrelevant. Completely irrelevant.

MR. CHIGNELL: That's fine.

MR. SWETT: Acted differently when then? When do you want him to act different? He wasn't even there.

MR. CHIGNELL: Let me just ask my question.

MR. SWETT: Well, this is irrelevant. This is --

MR. CHIGNELL: No, it's not irrelevant.

MR. SWETT: I don't have follow-up because it's totally irrelevant.

MR. CHIGNELL: It's not irrelevant.

BY MR. CHIGNELL:

Depositions, Inc.
info@NCDepo.com     www.NCDepo.com     (919) 557-4640
Case 5:13-cv-00649-FL     Document 45-12     Filed 12/01/14     Page 6 of 8

Q. Okay. But did you ever -- do you ever remember setting a clock or timer for the prescribed treatment period with the leased chamber?

A. I don't remember if we did.

Q. Had you -- have you ever read this seventh instruction prior to today?

A. No, I never read this.

Q. And if you would have read it prior to today, would you have acted differently?

MR. SWETT: Object.

BY MR. CHIGNELL:

Q. In connection with the treatments that you were giving your son?

MR. SWETT: Calls for speculation.

A. It was such a simple thing to do, I probably would not have.

Q. Okay. The next sentence says: Reassure the person inside that the attendant will remain with them during the entire treatment and will be regularly checking on them. Do you see -- see that?

A. I see where it says that, yes.

Q. Have you read that before today?

A. No.

Q. And what does that mean?

A. What this means to me is I'm in a clinical

Depositions, Inc.
info@NCDepo.com          www.NCDepo.com          (919) 557-4640
Case 5:13-cv-00649-FL    Document 45-12    Filed 12/01/14    Page 7 of 8

A. -- did the same.

Q. Same. Okay. Did -- were you aware that there was no -- well, strike that.

Was there an oxygen sensor inside the chamber that you leased from the Pressons?

A. No.

Q. And -- and did you know that when you took delivery of the chamber?

A. Yes. I knew there was no oxygen sensor in there.

Q. Did you ever try to rig one up?

A. No.

Q. So, going to the night of the incident, my understanding was that based on the testimony from your wife and your son is that you were in Raleigh at the time; is that correct?

A. Correct.

Q. You were on assignment with Dyn-Corp or with Honeywell?

A. Honeywell.

Q. Okay.

A. On a work mission.

Q. And -- and where were you working at the time? Like where were you --

A. Raleigh.

Depositions, Inc.
info@NCDepo.com    www.NCDepo.com    (919) 557-4640
Case 5:13-cv-00649-FL    Document 45-12    Filed 12/01/14    Page 8 of 8