EXHIBIT P

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CV-00649-FL

| | |
|---|---|
| Amy Sparks, individually, and Robert D. Sparks, as Personal Representative of the Estate of Jarred B. Sparks, <br><br> Plaintiffs, <br><br> vs. <br><br> Oxy-Health, LLC and Oxy-Health Corporation, <br><br> Defendants. | **WRONGFUL DEATH / SURVIVAL ACTION** <br><br> **DECLARATION OF TOM WORKMAN** |

COMES NOW, Wilbur T. Workman, being of lawful age and sound mind, declares the following:

1. My name is Wilbur T. Workman and I have personal knowledge of the facts stated in this Declaration.

2. I am over 18 years of age, suffer from no known disability, and have personal knowledge of the facts set forth herein.

3. I have attached to this Declaration as Exhibit "A" a true and correct copy of my Curriculum Vitae.

4. I have attached to this Declaration as Exhibit "B" a true and correct copy of my Expert Report containing my opinions produced in this matter.

5. I have no economic interest in the outcome of the Sparks family's lawsuit against OxyHealth.

6. I have knowledge, experience, and training in the following areas: Regulation and FDA Clearance of Hyperbaric Chambers as Class II Medical Devices; Compliance to Recognized Industry Safety Standards and Regulations Governing Hyperbaric Chambers; and Standards of Practice in the Practice of Hyperbaric Medicine.

7. I am board certified in Aerospace Physiology by the Aerospace Medical Association since 1979 and Hyperbaric Technology (with distinction) by the National Board of Diving and Hyperbaric Medical Technology since 1991.

8. I am employed as Director of Quality Assurance & Regulatory Affairs with the Undersea & Hyperbaric Medical Society (UHMS) in San Antonio, Texas.

9. The UHMS was formed in 1967. It is an international non-profit association serving some 2,000 physicians, scientists, associates and nurses from more than 50 countries in the fields of hyperbaric and dive medicine. The UHMS is an important source of scientific and medical information pertaining to hyperbaric medicine involving hyperbaric oxygen therapy and diving through its bimonthly, peer-reviewed journal, Undersea and Hyperbaric Medicine, symposia, workshops, books and other publications. It organizes an annual scientific meeting at different U.S. and international locations to permit review of the latest in research and treatment and to promote the highest standards of practice.

10. As Director of Quality Assurance and Regulatory Affairs at the Undersea & Hyperbaric Medical Society, I am responsible for the development, implementation and management of all activities related to clinical hyperbaric facility accreditation. I also act as liaison to federal agencies, such as the Centers for Medicare and Medicaid Services and the Food and Drug Administration. As a result, I have extensive experience with industry standards and regulations governing hyperbaric chambers.

11. Moreover, I maintain coordinated activities with other regulatory, professional, trade and standards organizations such as the Joint Commission for the Accreditation of Health Care Organizations, the National Board of Diving and Hyperbaric Medical Technology, the American Society of Mechanical Engineers, and the National Fire Protection Association.

12. My past employment experiences include the successful design, fabrication and testing of the world's only post-tensioned concrete rectangular hyperbaric chamber and efforts to improve the quality of clinical hyperbaric medicine, enhance facility safety, facilitate patient treatment and promote innovative technology to the international clinical hyperbaric medicine community achieved through a combination of consulting services focused on hyperbaric facility planning, operational safety issues, regulatory community education, compliance with international codes and standards, and academic programs.

13. I was a Hyperbaric Physiologist in the United States Air Force. In this capacity, I managed chamber operations and chamber maintenance as well as provided consultation and education to requesting agencies on high pressure systems management and hyperbaric physiology. Further, as Deputy Chief and Chief Hyperbaric Physiologist, I provided authoritative consultation and education to HQ USAF, SPACE Command, Air Force Academy, PACAF, SAC, TAC, ATC, MAC, AFLC, AFSC, and USAFE on altitude and high pressure systems management. Also, I was a consultant to the USAF Surgeon General for Hyperbaric Physiology and Clinical Hyperbaric Medicine Facilities and chaired the DOD Joint Advisory Committee on Clinical Hyperbaric Medicine (JACCHM).

14. I am a member in professional organizations with a focus on hyperbaric therapy and safety such as the Aerospace Medical Association, the Aerospace Physiologist Society,

2

Undersea & Hyperbaric Medical Society, National Fire Protection Association, National Board of Diving and Hyperbaric Medical Technology, and International Congress on Hyperbaric Medicine.

15. Moreover, I have served as Chairman of the Undersea & Hyperbaric Medical Society Hyperbaric Chamber Safety Committee, the National Fire Protection Association Technical Committee on Hyperbaric and Hypobaric Facilities, and the American Society of Mechanical Engineers Medical Systems Subcommittee.

16. Hyperbaric oxygen therapy is a treatment in which a patient breathes oxygen while inside a hyperbaric chamber at a pressure greater than sea level pressure. A hyperbaric chamber is a device intended to increase oxygen levels in a patient's tissue by means of pressurization to greater than atmospheric pressure.

17. There are two basic hyperbaric chamber configurations: monoplace (or portable) chambers intended to contain one occupant and multiplace (or traditional) chambers intended for more than one occupant. Although most traditional and some portable hyperbaric chambers are metal cylinders, a substantial number of portable hyperbaric chambers are acrylic tubes, generally ranging in diameter from 28 to 34 inches. Traditional hyperbaric chambers are typically made from metal, in a cylindrical configuration.

18. The FDA regulates medical devices. The FDA began regulating hyperbaric chambers as medical devices in 1976. On July 16, 1982, the FDA further classified hyperbaric chambers as Class II medical devices. Anyone who engages in the manufacturer, preparation, distribution, compounding, assembly, or processing of a device intended for human use that is a medical device, is subject to the FDA medical device regulations.

19. At least 90 days before a Class II medical device is intended for market, an entity must submit to the FDA a premarket notification also called a 510(k) submission. The 510(k) submission must contain sufficient information demonstrating that a device is substantially equivalent to a predicate device. A premarket notification is also required for a product that has been or is being marketed by a firm when there is a significant change or modification, including intended use of the device, which may significantly affect the safety or effectiveness of the device.

20. A substantial equivalence order must be obtained before commercial distribution of a device for which a premarket notification has been submitted. For the purpose of determining substantial equivalence, the term substantially equivalent means, with respect to a device being compared to a predicate device, that the device has the same intended use as the predicate device and that the device has the same technological characteristics as the predicate device. During the 510(k) review process, the FDA does not directly determine whether the device is safely designed.

21. I have extensive experience with the application of major regulations affecting hyperbaric chambers, specifically Title 21 Code of Federal Regulations, Parts 800 to 895.

3

22. The Medical Device Reporting (MDR) regulation, 21 CFR Part 803, contains requirements for manufacturers, importers, device user facilities and distributors to report certain device-related adverse events and product problems to the FDA. Pursuant to the MDR regulation, manufacturers of medical devices are required to submit reports to the FDA of a reportable death, serious injury, or device malfunction. (21 CFR §803.10(c)). A "manufacturer" is any person who manufacturers, prepares, propagates, compounds, assembles, or processes a device by chemical, physical, biological, or other procedure (21 CFR §803.3). The term includes any person who:

- Repackages or otherwise changes the container, wrapper, or labeling of a device in furtherance of the distribution of the device from the original place of manufacture; or
- Initiates specifications for devices manufactured by a second party for subsequent distribution by the person initiating the specifications.

23. OxyHealth's marketing materials reveal that it plays a large role in the design and manufacture of the OxyHealth line of hyperbaric chambers. For example, statements on pages and in videos from www.oxyhealth.com represent that OxyHealth selects materials, builds, manufactures, inspects and tests its chambers, including the Vitaeris 320. OxyHealth is a manufacturer of the OxyHealth Vitaeris 320 hyperbaric chamber pursuant to applicable federal regulations, including 21 CFR § 803.3 and 21 CFR § 820.3(o).

24. ASME PVHO-1, Safety Standard for Pressure Vessels for Human Occupancy, provides engineering requirements and guidance for the design, fabrication, inspection, testing, marking, and stamping of pressure vessels for human occupancy (PHVO) designed for a pressure differential of 2 psi or greater. (2002 ASME PVHO-1; 1.1.1, 1.2.1). A hyperbaric chamber is a PVHO. Thus, any hyperbaric chamber designed for 2 psi or greater must meet the engineering safety standards as published in ASME PVHO-1. All hyperbaric chamber materials must similarly meet the requirements of this standard. (2002 ASME PVHO-1; 1.3.1).

25. ASME PVHO-1 is the recognized industry safety standard for all hyperbaric chambers, including both traditional and portable hyperbaric chambers such as the OxyHealth Vitaeris 320.

26. Additionally, the FDA has recognized ASME PVHO-1, Safety Standard for Pressure Vessels for Human Occupancy and NFPA 99, Standards for Health Care Facilities Chapter 20- Hyperbaric Facilities as consensus standards for use in satisfying portions of device premarket review submissions or other requirements. The FDA does not require compliance with these standards for marketing clearance, but these remain industry safety standards for hyperbaric chambers.

27. On August 2, 2000, the line of portable hyperbaric chambers distributed by OxyHealth, including the OxyHealth Vitaeris 320, was cleared to be marketed subject to the general

4

controls provisions of the Federal Food, Drug, and Cosmetic Act. (#K001409). However, these chambers were only cleared for use in the treatment of acute mountain sickness (AMS).

28. AMS is a condition that results from exposure to altitudes in excess of 8,000 feet. It affects approximately 20% of people who are unable to properly acclimate to the increased altitude (reduced pressure); AMS is relatively rare.

29. It is clear from marketing materials and attendance at select conferences that OxyHealth has and continues to market its chambers, including the Vitaeris 320, for the treatment of unapproved indications including, but not limited to, autism. This is in direct contradiction to Section 331 of the Federal Food, Drug and Cosmetics Act, which makes it unlawful to introduce into interstate commerce any food, drug, device or cosmetic that has been adulterated or misbranded and 21 U.S.C. §§ 351 & 352.

30. Further, OxyHealth's marketing materials attest to the simplicity of use and boast that OxyHealth portable mild hyperbaric chambers are designed to allow patients to treat themselves at home, eliminating the need for someone external to the chamber to serve as a medical safety observer for the user while inside the chamber. For example, the Portable Hyperbaric Chamber video appearing on www.oxyhealth.com states "No special training is required to operate the portable mild hyperbaric chamber. Once familiar with the unit, a user can easily give self treatments, a feature no other hyperbaric chamber can offer. A unique two zipper seal makes self treatments easy, as the user can do it all without any assistance."

31. A hyperbaric chamber designed for use at home by untrained, nonmedical persons, such as the OxyHealth Vitaeris 320, should be designed with extra safety considerations due to the foreseeable risks of danger inherent in such a product used in such an environment. At the very least, these PVHOs should comply with the industry standards set forth in ASME PVHO-1.

32. Pursuant to 28 United States Code § 1746, I declare and certify under penalty of perjury that the foregoing is true and correct:

Executed on **12/26/2014** (date), by _Wilbur T. Workman_.
Wilbur T. Workman

5